# 22-1524

## United States Court of Appeals
## for the Second Circuit

LEON D. BLACK,

*Plaintiff-Appellant*,

v.

GUZEL GANIEVA, WIGDOR LLP, JOSH HARRIS, AND STEVEN RUBENSTEIN,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Southern District of New York,
No. 21-cv-08824, Hon. Paul A. Engelmayer

**OPENING BRIEF OF APPELLANT**

Susan R. Estrich
ESTRICH GOLDIN LLP
947 Berkeley St.
Santa Monica, CA 90403
Phone: (213) 399-2132
susan@estrichgoldin.com

Michael K. Kellogg
Reid M. Figel
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
mkellogg@kellogghansen.com
rfigel@kellogghansen.com

*Attorneys for Plaintiff-Appellant Leon D. Black*

# TABLE OF CONTENTS

                                                                    **Page**

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ........................................................... 1

JURISDICTIONAL STATEMENT ....................................................... 3

ISSUES PRESENTED FOR REVIEW ................................................... 3

STATEMENT OF THE CASE .............................................................. 4

      A.    The Parties ......................................................................... 4

      B.    Plaintiff's Original and First Amended Complaints ............. 5

      C.    Plaintiff Retains New Counsel and Informs the Court of His
           Intent To Amend ................................................................ 7

      D.    Filing the Rule 15 Motion and Proposed SAC ................... 11

      E.    The District Court Denies the Rule 15 Motion Without
           Considering the Proposed SAC .......................................... 13

      F.    The District Court Dismisses the FAC with Prejudice and
           Denies Leave To Amend ..................................................... 16

STANDARD OF REVIEW .................................................................. 17

SUMMARY OF ARGUMENT ............................................................ 18

ARGUMENT ..................................................................................... 20

I.    The District Court's Denial of Plaintiff's Rule 15(a)(2)
    Motion To Amend Should Be Vacated ....................................... 20

      A.    The Proposed Amendment Did Not Unduly Prejudice
           Defendants and Was Made in Good Faith ........................... 21

      B.    The District Court Abused Its Discretion in Basing Its
           Order on Plaintiff's Purported Disregard for "Deadlines and
           Admonitions" It Never Issued ............................................ 27

II.    The District Court Erred Again When It Concluded, Without
       Addressing the Contents of the Proposed SAC, that Amendment
       Would Be Futile........................................................................................36

       A.    The Court Erred When It Dismissed the FAC with Prejudice............37

       B.    The Proposed SAC Included Significant New Allegations
             That the District Court Should Evaluate in the First Instance ...........42

CONCLUSION .......................................................................................................45

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agerbrink v. Model Serv. LLC*,
    155 F. Supp. 3d 448 (S.D.N.Y. 2016) ........................................................... 23

*Alan Guttmacher Inst. v. McPherson*,
    616 F. Supp. 195 (S.D.N.Y. 1985), *aff'd*,
    805 F.2d 1088 (2d Cir. 1986) ....................................................................... 22

*Albany Ins. Co. v. Esses*,
    831 F.2d 41 (2d Cir. 1987) ........................................................................... 41

*ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ........................................................................... 38

*Azkour v. Haouzi*,
    2012 WL 3667439 (S.D.N.Y. Aug. 27, 2012) ............................................. 23

*Baker v. Bensalz Prods., Inc.*,
    2021 WL 4267594 (S.D.N.Y. Sept. 20, 2021) ...................................... 23, 27

*Bank of Nova Scotia v. United States*,
    487 U.S. 250 (1988).......................................................................................30

*Bensch v. Estate of Umar*,
    2 F.4th 70 (2d Cir. 2021) .................................................................. 2, 17, 39

*Bellikoff v. Eaton Vance Corp.*,
    481 F.3d 110 (2d Cir. 2007) ......................................................................... 37

*Bisciglia v. Kenosha Unified Sch. Dist. No. 1*,
    45 F.3d 223 (7th Cir. 1995) ......................................................................... 38

*Booking v. Gen. Star Mgmt. Co.*,
    254 F.3d 414 (2d Cir. 2001) ......................................................................... 44

*Brook v. Simon & Partners LLP*,
    783 F. App'x 13 (2d Cir. 2019) ............................................................. 37, 41

*Carlisle v. United States*,
    517 U.S. 416 (1996)...................................................................................... 29

iii

*City of New York v. Golden Feather Smoke Shop, Inc.*,
597 F.3d 115(2d Cir. 2010) ..................................................... 17, 21

*City of New York v. Grp. Health Inc.*,
649 F.3d 151 (2d Cir. 2011) ........................................................ 20

*Cuoco v. Moritsugo*,
222 F.3d 99 (2d Cir. 2000) .......................................................... 41

*Foman v. Davis*,
371 U.S. 178 (1962)..................................................................... 20

*Fontoine v. Permanent Mission of Chile to United Nations*,
2019 WL 2482374 (S.D.N.Y. June 14, 2019) .............................. 26

*Guadagno v. M.A. Mortenson Co.*,
2018 WL 4870693 (W.D.N.Y. Oct. 2, 2018) ............................... 26

*Hartford Courant Co. v. Pellegrino*,
380 F.3d 83 (2d Cir. 2004) .......................................................... 44

*Kairam v. W. Side GI, LLC*,
793 F. App'x 23 (2d Cir. 2019) .................................................... 38

*Luce v. Edelstein*,
802 F.2d 49 (2d Cir. 1986) .......................................................... 38

*Lynch v. City of New York*,
589 F.3d 94 (2d Cir. 2009) .......................................................... 18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015) ............................................. 18, 20, 44

*Macias v. Ocwen Loan Servicing, LLC*,
718 F. App'x 32 (2d Cir. 2017) .................................................... 26

*Martell Strategic Funding LLC v. Am. Hospitality Acad.*,
2017 WL 2937649 (S.D.N.Y. July 10, 2017)............................... 25

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007) ........................................................ 25

*Metz v. U.S. Life Ins. Co. in City of New York*,
662 F.3d 600 (2d Cir. 2011) ........................................................ 17

iv

*Monahan v. N.Y.C. Dep't of Corr.*,
    214 F.3d 275 (2d Cir. 2000) .......................................................... 22

*Panther Partners, Inc. v. Ikanos Comm'cns, Inc.*,
    347 F. App'x 617 (2d Cir 2009) ............................................... 37, 38

*Parker v. Columbia Pictures Indus.*,
    204 F.3d 326 (2d Cir. 2000) .................................................... 28, 30

*Pasternack v. Shrader*,
    863 F.3d 162 (2d Cir. 2017 ......................................................... 20

*Polich v. Burlington N., Inc.*,
    942 F.2d 1467 (9th Cir. 1991) ..................................................... 38

*Prayze FM v. FCC*,
    214 F.3d 245 (2d Cir. 2000) ....................................................... 21

*Ricciuti v. N.Y.C. Transit Auth.*,
    941 F.2d 119 (2d Cir. 1991) ............................................. 1, 18, 20

*Ronzani v. Sanofi S.A.*,
    899 F.2d 195 (2d Cir. 1990) ....................................................... 37

*Sacerdote v. New York Univ.*,
    9 F.4th 95 (2d Cir. 2021) ............................................................ 29

*Shimon v. Equifax Info. Servs. LLC*,
    994 F.3d 88 (2d Cir. 2021) ......................................................... 18

*Singleton v. Wulff*,
    428 U.S. 106 (1976)................................................................... 44

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
    303 U.S. 283 (1938)................................................................... 24

*Staggers v. Otto Gerdau Co.*,
    359 F.2d 292 (2d Cir. 1966) ....................................................... 44

*State Teachers Ret. Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981) ....................................................... 22

*Sumpter v. Skiff*,
    260 F. App'x 350 (2d Cir. 2008)................................................. 22

*Thea v. Kleinhandler*,
807 F.3d 492 (2d Cir. 2015) .......................................................... 18

*Thompson v. New York Life Ins. Co.*,
644 F.2d 439 (5th Cir. 1981) ........................................................ 30

*Underwood v. Roswell Park Cancer Inst.*,
2017 WL 1593445 (W.D.N.Y. May 2, 2017) ............................. 23

*United States v. Binday*,
804 F.3d 558 (2d Cir. 2015) ........................................................ 13

*Valentin v. City of Rochester*,
2016 WL 5661729 (W.D.N.Y. Sept. 30, 2016).......................... 26

*Vann v. Comm'r of N.Y.C. Dep't of Corr.*,
496 F. App'x 113 (2d Cir. 2012). ............................................... 17

*Williams v. Citigroup Inc.*,
659 F.3d 208 (2d Cir. 2011) ........................................................ 41

## STATUTES

18 U.S.C. § 1964 .............................................................................. 3

28 U.S.C. § 1291 .............................................................................. 3

28 U.S.C. § 1331 .............................................................................. 3

## RULES

Fed. R. Civ. P. 9(b) ......................................................................... 38

Fed. R. Civ. P. 12(b)(6)............................................................ 9, 16, 18

Fed. R. Civ. P. 15 ................................................................... *passim*

Fed. R. Civ. P. 15(a) ................................................................. 28, 30

Fed. R. Civ. P. 15(a)(1)............................................................ 9, 31-33

Fed. R. Civ. P. 15(a)(1)(B) ........................................................ 6, 28

Fed. R. Civ. P. 15(a)(2)........................................................... *passim*

Fed. R. Civ. P. 15(b) ................................................................. 33

Fed. R. Civ. P. 16 ......................................................... 6, 28-29

Fed. R. Civ. P. 16(b)(1) ............................................................ 28

Fed. R. Civ. P. 16(b)(3)(A) ...................................................... 28

Fed. R. Civ. P. 16(b)(4) ............................................................ 29

# PRELIMINARY STATEMENT

Plaintiff-Appellant Leon D. Black ("Plaintiff") appeals from two orders entered by the United States District Court for the Southern District of New York, each denying leave to amend his First Amended Complaint (the "FAC"). SPA1, SPA3. Both orders exceeded the district court's discretion because they rested on errors of law.

In its first order, the district court summarily denied Plaintiff's Rule 15(a)(2) motion to amend, stating that Plaintiff had "disregard[ed] the Court's deadlines and admonitions." SPA2. That was reversible error. The district court had never set a deadline for Plaintiff to seek leave to amend, nor admonished Plaintiff to seek leave to amend by a date certain. Had that court followed this Court's guidance that "it is rare that such leave [to amend under Rule 15(a)(2)] should be denied," *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991), it would have granted the motion.

In its second order, which granted Defendants-Appellees' ("Defendants") motions to dismiss the FAC, the district court ordered dismissal with prejudice, stating in a footnote that it "ha[d] found the FAC's claims glaringly deficient in fundamental respects, and thus f[ound] that it would be futile to allow repleading." SPA64. Neither in making that finding nor elsewhere in the record did the district court consider whether the allegations of Plaintiff's proposed Second Amended

1

Complaint (the "proposed SAC") could cure the defects it had found. That too was reversible error. To find amendment futile in the face of a proposed amended complaint, a district court must actually "analy[ze] the additional allegations" that a plaintiff "propose[s] to include" through amendments and consider their "legal sufficiency." *Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). The district court's refusal to analyze the sufficiency of the proposed SAC again exceeded its discretion.

The district court should instead have applied the familiar rule that courts "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). This Court's cases applying that standard recognize two bases for denying leave to amend: (1) bad faith, and (2) undue prejudice to the nonmoving party. There is no finding of bad faith here, nor would the record support one. Nor is there any basis for a finding of prejudice, as no discovery had occurred when Plaintiff sought leave to amend.

Plaintiff filed a Rule 15(a)(2) motion—at what the district court recognized as a "protean" stage of the case, JA852—after Plaintiff had alerted the court and Defendants of his intent to seek leave to amend. JA854. In support of his Rule 15 motion, Plaintiff set forth the reasons for his amendment: to revise and clarify the nature, purpose, and form of Defendants' unlawful racketeering enterprise; to clarify the predicate acts alleged against each Defendant; to incorporate new facts

2

that Plaintiff learned after filing the FAC; and to make other substantial revisions deemed advisable by new counsel retained just one month before leave was sought. Dkt. No. 104.

This Court should vacate the district court's order denying Plaintiff's motion and its later order dismissing the case to the extent dismissal was with prejudice.  It should then remand for that court to consider the proposed SAC, in the first instance, under the appropriate Rule 15(a)(2) standard.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964.  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.     Whether the district court abused its discretion when it denied Plaintiff's April 18, 2022 Rule 15(a)(2) motion for leave to amend the FAC for Plaintiff's alleged failure to comply with certain "deadlines and admonitions," SPA2, it never entered or made; without considering the contents of a filed proposed SAC; and in disregard of controlling precedent of this Court identifying permissible grounds to deny a Rule 15 motion.

2.     Whether the district court abused its discretion when it dismissed the FAC with prejudice based solely on its determination that the FAC was so

3

"glaringly deficient," SPA64, that repleading would be futile, denying Plaintiff a chance to seek leave to amend the FAC, again without considering the contents of the previously filed proposed SAC.

## STATEMENT OF THE CASE

### A.    The Parties

Plaintiff Leon D. Black is the founder of Apollo Global Management, Inc. ("Apollo"), a publicly traded alternative asset manager with approximately $500 billion under management.[1]  Plaintiff has been Apollo's largest shareholder since its founding in 1990, and until March 21, 2021 was its Chairman and Chief Executive Officer.  JA862.

Defendant Josh Harris was also an executive officer and director of Apollo and, as alleged in the SAC, sought to replace Plaintiff as the leader of Apollo. Harris, along with his co-Defendants Steven Rubenstein and Guzel Ganieva, operated and managed an association-in-fact enterprise comprised of Harris's family office, HRS Management, and various employees and professional advisors.

Plaintiff alleges he was the victim of a scheme of unlawful conduct designed to remove Plaintiff from his leadership role at Apollo, thereby allowing Harris to

---

[1] The facts presented here are those alleged in Plaintiff's proposed SAC. JA858-920.

4

succeed him as CEO. To accomplish this, Harris defrauded Apollo and its officers

and directors through acts of corporate malfeasance, including breaches of his

fiduciary and other duties, misrepresentations and omissions to Apollo and its

shareholders, and misappropriation of corporate property. Harris, Rubenstein, and

Ganieva furthered this scheme by airing various claims of sexual misconduct by

Plaintiff in the press. They also publicized false statements and false allegations

included in frivolous complaints that Ganieva filed in New York state court, falsely

accusing Plaintiff of rape and other sexual misconduct.[2] As a result of these

actions, Plaintiff resigned as CEO of Apollo on March 20, 2021. Plaintiff

commenced this litigation to obtain redress for the significant financial and

reputational injuries he suffered as a direct consequence of Defendants' actions.

### B. Plaintiff's Original and First Amended Complaints

On October 28, 2021, Plaintiff filed a complaint alleging both civil RICO

claims and defamation claims against Ganieva and Defendant Wigdor LLP

("Wigdor"),[3] as well as three John Doe Defendants. JA16-66. On January 7,

2022, Wigdor and Ganieva moved to dismiss the complaint. JA352-395, JA396-

402. On January 7, 2022, the district court issued an order stating that, pursuant to

_____

[2] Initial State Compl., *Ganieva v. Black*, No. 155262/2021 (N.Y. Sup. Ct. June 1, 2021). JA68-97. Plaintiff is actively defending against Ganieva's false claims in litigation which remains at an early stage.

[3] Plaintiff alleges that Wigdor is liable for defamation. Wigdor is not a RICO defendant in the FAC or proposed SAC.

Rule 15(a)(1)(B), Plaintiff had 21 days to file an opposition to Defendants' motions to dismiss or amend the complaint. JA403-404. The district court directed that any amendment must be filed by January 28, 2022, JA403, adding that "[n]o further opportunities to amend will ordinarily be granted." JA403.

On January 24, 2022, Plaintiff filed the FAC. JA414-472. Plaintiff added Harris and Rubenstein as Defendants, and revised his claims against Wigdor. Also on January 24, 2022, Plaintiff's lawyers from the Quinn Emanuel firm filed a motion to withdraw as counsel of record, citing a confidential potential conflict of interest. Dkt. No. 51.[4] As a result, Susan Estrich of Estrich Goldin LLP, who had served alongside Quinn Emanuel as counsel for Plaintiff and had signed the original complaint, became sole counsel of record. On March 4, 2022, each of the four Defendants filed motions to dismiss the FAC. Dkt. Nos. 80, 83, 85, 88. The district court did not issue a case management plan or Rule 16 scheduling order at any time during the pendency of this action.

---

[4] Alex Spiro, a partner at Quinn Emanuel, was approached by an associate of the enterprise to represent Ganieva. JA419, JA438. Quinn Emanuel's motion does not address what connection, if any, this allegation may have had to the request to withdraw, noting only that the potential conflict "may implicate issues of privilege." Dkt. No. 51.

### C. Plaintiff Retains New Counsel and Informs the Court of His Intent To Amend

On March 8, 2022, new counsel—Reid M. Figel and Michael K. Kellogg of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.—entered notices of appearance on Plaintiff's behalf. Dkt. Nos. 90, 91. On March 10, 2022, the district court held the initial pre-trial conference in this litigation. The conference had been delayed several times, due first to Plaintiff's filing of the FAC and later due to a surge in cases of COVID-19. Dkt. Nos. 17, 29, 39, 71, 77. At the conference, the court identified four issues it wished to address: (1) the New York state court case between Ganieva and Plaintiff; (2) Plaintiff's request for discovery and Defendants' application for a stay of discovery pending the resolution of the motions to dismiss; (3) a preview of the arguments Plaintiff would raise in opposition to the motions to dismiss; and (4) some questions about Wigdor's pending sanctions motion against Plaintiff and his counsel. JA757-758.

The district court addressed at length Defendants' motion to stay discovery prior to the adjudication of Defendants' pending motions to dismiss the FAC. The court asked Plaintiff's counsel why pre-motion discovery was necessary, observing that a motion to dismiss the FAC had been filed, and Plaintiff's opposition would be due shortly. JA799-800. Plaintiff's newly-retained counsel responded to the court's reference to the anticipated filing of Plaintiff's opposition, indicating that Plaintiff was analyzing whether Plaintiff had an amendment as of right with

7

respect to Harris and Rubenstein, who were named as Defendants for the first time in the FAC:

> Mr. Figel: . . . One of the things we are considering—we haven't made a decision—is whether we would seek an amendment. We believe there is an argument [that we] have an amendment as of right as to the [new] defendants in the case.

JA800. The court responded:

> The Court: Let's pause on that. I issued an "amend or oppose" order. You amended. That was your right to do so. The original complaint lists Does 1, 2, and 3. I assumed that Harris and Rubenstein are among those Does. Are they not?
>
> . . .
>
> Mr. Figel: Whether we have the right under Rule 15 on the case law I am not prepared to argue today, because I'm sure your Honor knows Rule 15 permits liberal amendments. We have had motions that inform the defendants' view of the defenses, [which] we might want to address and amend the complaint.
>
> The Court: Let's just ask the specific question. Ms. Estrich, your initial RICO complaint against Wigdor and Ganieva also was brought against three Doe defendants. Are those in fact now known to include Harris and Rubenstein?
>
> Ms. Estrich: Yes, your Honor.
>
> The Court: So even if identified as a Doe, Harris and Rubenstein are now—there is now a second—there is an amended complaint as to each of them.

JA800-801.

The district court then shifted to the question of the briefing schedule on Defendants' pending motions to dismiss. Plaintiff requested a modest extension of the schedule, which the court indicated it was inclined to grant. JA801. The court

8

then returned to whether Plaintiff had an amendment as of course under Rule

15(a)(1) with respect to each Defendant named for the first time in the FAC.

> [The Court:] Still in all, the real question is, all right, that [i.e., the extension of the briefing schedule] defers, then, the resolution of this by a month or something. If you are responding, you are presumably foregoing, then, the decision to seek electively the right to amend.

> Ms. Estrich: We would like to use that time period in part to decide whether our appropriate response is to oppose the motions to dismiss or whether, in light of the new evidence we have received, which does change certain critical facts, we should seek the Court's permission to amend, even if we don't have an amendment as of right. And we would do that within that time period.

> The Court: Be that as it may, if the complaint may yet even change, if you are proposing to amend, why should you get discovery before all of this is sorted out?

JA801-802.

The district court then addressed whether to grant Defendants' motion to

stay discovery pending adjudication of the motions to dismiss under Rule 12(b)(6).

In granting Defendants' motion to stay discovery, the court stated: "As a final

matter, and this is not necessary to the decision, I will note that plaintiff's counsel

*floated the possibility of seeking leave to file a third complaint, a second amended*

*complaint.* By no means by addressing this am I indicating that that would be

granted, *but should an amended complaint, yet a new one, be sought and*

*authorized, that would be yet another reason to defer discovery.*" JA851-852

(emphases added). The court commented further on how the possibility of

amendment had influenced the court's decision to deny discovery, stating: "who

9

knows what the claims would be in the third amended—the third complaint, whether they would be narrower or broader than the ones amongst the existing parties, whether a party would be dropped, whether a party would be added." JA852.

On April 4, 2022, Plaintiff filed his memorandum of law in opposition to Defendants' motions to dismiss the FAC. Dkt. No. 101. Along with the memorandum of law, Plaintiff filed a letter to the district court, stating his intent to seek leave to file a second amended complaint. The letter stated:

> We write . . . to inform the Court that Plaintiff, pursuant to Federal Rule of Civil Procedure 15, intends to seek leave to file a Second Amended Complaint.
>
> . . .
>
> We have informed Defendants' counsel that we will agree to a reasonable extension of the current motion to dismiss briefing schedule, to permit Defendants to review the proposed amendment and determine whether to file replies to the Memorandum of Law in Support of Plaintiff's Opposition to Defendants' Motions to Dismiss, or to defer the reply briefing pending the Court's decision on a Rule 15 motion.

JA854. The district court did not endorse or otherwise respond to the letter.

On April 8, 2022, Plaintiff met and conferred with Defendants regarding the proposed SAC. JA1342. At that time—just one month after Plaintiff's new counsel entered their appearances—Plaintiff had not finished drafting the proposed SAC. Defendants declined to consent to Plaintiff's filing a second amended

10

complaint prior to seeing a copy of it, and asked Plaintiff to make no representations to the court regarding their position.  JA1342.

### D.    Filing the Rule 15 Motion and Proposed SAC

On April 18, 2022, Plaintiff filed a motion pursuant to Rule 15(a)(2) and an accompanying memorandum of law seeking leave to file the proposed SAC.  Dkt. Nos. 103, 104.  Plaintiff attached the proposed SAC as an exhibit to that motion. JA857-1205.  The memorandum in support of the motion, Dkt. No. 104, set forth three reasons in support of Plaintiff's request to amend pursuant to Rule 15.  *First*, to "[d]evelop and clarify the nature and history of the Enterprise and the RICO predicates committed by each member of the Enterprise"; *second*, to "[a]dd additional facts, including facts discovered after Plaintiff filed the Amended Complaint"; and *third*, to "[m]ake other additions and revisions to the Amended Complaint as deemed advisable and appropriate by Plaintiff's newly-retained counsel."  *Id.* at 1.  Plaintiff argued that the amendment should be permitted under Rule 15's liberal pleading standards.  *Id.* at 1-2.  Plaintiff further explained why Defendants could not demonstrate that Plaintiff's motion was made in bad faith, or that they would be prejudiced by the amendment.  *Id*. at 2-5.

Plaintiff also filed as an exhibit a redline showing the near-total revision of the complaint.  JA1207-1336.  As those redlines reflect, the proposed SAC alleged a different RICO enterprise, a different scheme to defraud involving different

11

predicate acts, and additional victims as compared to the FAC. The FAC alleged a limited duration, single-purpose enterprise arising from "two relationships that both led to an extortionate plot" to "take down" Plaintiff. JA414. The enterprise in the FAC—described as a "war cabinet of advisers"—was created as an act of revenge after Harris realized he would not succeed Plaintiff as CEO of Apollo. JA416-417. The predicate acts allegedly committed through this enterprise were limited to extortion and mail and wire fraud, all in support of helping "spread Ms. Ganieva's lies," JA419, and supporting her efforts to extort and otherwise obtain money from Plaintiff. JA419, JA422-423.

The proposed SAC, in contrast, alleged a new and different enterprise, a different mail and wire fraud scheme, and a different pattern of predicate acts, largely centered on the efforts of Harris and Rubenstein to defraud Apollo and Plaintiff. Among other things, Harris formed the enterprise alleged in the proposed SAC years before any alleged criminal conduct, for the express purpose of pursuing a wide range of personal and financial objectives. JA865-866. In contrast to the FAC, the predicate acts in the proposed SAC arose from a sophisticated scheme in which Harris and Rubenstein engaged in breaches of fiduciary and other duties to Apollo. JA901-907. The proposed SAC alleged predicate acts with Apollo and its officers and directors as intended victims, based on specific and well-recognized theories of mail and wire fraud and RICO liability

12

under Second Circuit law. *See United States v. Binday*, 804 F.3d 558, 578 (2d Cir. 2015) ("We have affirmed [an inference of mail or wire fraud] where the defendant's misrepresentations foreseeably concealed economic risk or deprived the victim of the ability to make an informed economic decision."). The predicate acts alleged demonstrated that Harris, as a senior officer of a public corporation, and Rubenstein, an agent to Apollo, misled Apollo, its outside counsel, and its Board of Directors about highly-sensitive information critical to Apollo's ability to make informed decisions about internal corporate governance and strategic operational issues. JA901-907.

### E. The District Court Denies the Rule 15 Motion Without Considering the Proposed SAC

On April 19, 2022, one day after Plaintiff filed his Rule 15 motion, the district court ordered Defendants to submit a joint letter advising whether they had met and conferred with Plaintiff regarding the proposed SAC, and to state their position with respect to the pending motion. JA1337. On April 22, 2022, Defendants filed a letter, JA1338-1340, in which they acknowledged—in response to the court's question whether Plaintiff had met-and-conferred with Defendants over the Rule 15 motion—that they had done so. Defendants further informed the court that they opposed the Rule 15 motion, arguing they would suffer prejudice if a new complaint was filed; that the amendment was undertaken for improper purposes; that Plaintiff's retention of "new counsel with a different writing style

13

[was] not a basis to file a new pleading," and that the amendment would be futile. JA1339.

> Defendants represented to the court:

> When Mr. Black's counsel raised at the March 10, 2022 preliminary conference the possibility of seeking leave to amend again, the Court reminded counsel of the "amend or oppose" order, and further cautioned counsel that "[i]f you are responding [to the pending motions to dismiss], you are presumably foregoing, then, the decision to seek electively the right to amend." (3/10/22 Tr. at 51). Mr. Black's counsel nonetheless filed a 63-page opposition brief, which did not explain how Mr. Black proposed to amend the operative pleading (ECF No. 101), and filed the Motion to Amend two weeks later in a transparent attempt to prolong this action so that Mr. Black can continue to exploit the federal court system as a public-relations platform.

JA1338. In doing so, Defendants omitted significant information about what transpired at the March 10, 2022 hearing, and made no reference to the extensive colloquy in which Plaintiff's counsel advised the court about the possibility of an amendment, and the court's acknowledgment that a motion to amend may be filed.

On April 25, 2022, without granting Plaintiff an opportunity to respond to Defendants' letter, the district court summarily denied the Rule 15 motion in a five-paragraph order "[f]or much the same reasons given by defendants." SPA2. The court did not mention the substance of the proposed SAC or address either the new factual allegations or the significant changes to Plaintiff's theory of the case. SPA1-2. The court explained its rationale, observing: "Permitting plaintiff to amend anew would reward plaintiff for disregarding the Court's deadlines and

14

admonitions. It would also disrespect the legitimate interests of opposing parties, the Court, and the public in the orderly and efficient progress of this litigation."[5] SPA2. The court additionally stated that, in the event it granted Defendants' motions to dismiss the FAC, only then would it consider "whether and to what extent such dismissal(s) are to be with prejudice." SPA2.

On April 27, 2022, Plaintiff filed a letter with the district court, JA1341-1343, apologizing "for any misunderstanding regarding the court's admonitions and deadlines," and providing information intended to "set the record straight" with respect to aspects of the court's April 25, 2022 order. JA1343. The letter noted that the court's denial "appears to be based in part on misinformation provided by Defendants," and sought to clear up "any confusion generated by Defendants' submission." JA1341.

The letter specifically addressed the district court's conclusion that Plaintiff filed the Rule 15(a)(2) motion in violation of a court order. The letter stated that "we did not understand the Court to be admonishing us that if we opposed the motion to dismiss, we would be waiving our right to seek to amend under Rule 15." JA1342. The letter also set forth in detail the basis for this understanding,

---

[5] In a footnote, the district court added that "[a]lthough not a basis for this ruling, the Court was dismayed by plaintiff's refusal, in seeking defendants' consent to leave to amend, to share the proposed second amended complaint with defense counsel." SPA2.

15

including references to the Court's statements at the hearing.  JA1341.  The letter

stated that, at the March 10, 2022 hearing, counsel had "advised the Court and

Defendants that we were considering filing an amended complaint based on new

information which we were receiving in real time."  JA1341.  The letter further

noted that "[t]he Court made clear that it understood the situation confronting the

parties, stating:  '[I]f the complaint may yet even change, if you are proposing to

amend, why should you get discovery before all of this is sorted out?'"  JA1341.

The letter respectfully asked the court to "consider the full record in connection

with its future rulings in this litigation."  JA1343.

On May 2, 2022, the district court issued an order stating that it had received

Plaintiff's letter, that its order denying the motion for leave to amend stood, and

informed the parties that any additional correspondence with the court on this issue

would be unproductive.  JA1345.  Defendants filed their reply memoranda seeking

dismissal of the FAC on May 5, 2022.  Dkt. Nos. 112, 113, 114, 115.

## F.     The District Court Dismisses the FAC with Prejudice and Denies Leave To Amend

On June 30, 2022, the district court granted Defendants' Rule 12(b)(6)

motions in a 63-page opinion, and entered an order dismissing the FAC with

prejudice.  SPA3-65.  In its opinion, the district court found that the FAC did not

satisfy RICO's pleading standards.  SPA54.  In a footnote, the court set forth the

entirety of its reasoning for dismissing the FAC with prejudice, stating:

16

On January 7, 2022, following Ganieva's and Wigdor's motions to dismiss Black's initial complaint, the Court ordered Black to file any amended complaint by a date certain, noting that "[n]o further opportunities to amend will ordinarily be granted." Black did so in filing the FAC.

Moreover, the Court has found the FAC's claims glaringly deficient in fundamental respects, and thus finds that it would be futile to allow repleading. The Court accordingly denies leave to amend and dismisses such claims with prejudice.

SPA64 (citations omitted). Neither in its opinion, nor at any other time, did the district court make reference to the substance of the proposed SAC, or respond directly to any of the specific arguments advanced by Plaintiff in support of his Rule 15 motion.

## STANDARD OF REVIEW

A district court's denial of a Rule 15(a)(2) motion for leave to amend a complaint is reviewed for abuse of discretion. *See*, *e.g.*, *Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). A district court's decision to dismiss a case with prejudice is reviewed for abuse of discretion. *See*, *e.g.*, *Metz v. U.S. Life Ins. Co. in City of New York*, 662 F.3d 600, 602-03 (2d Cir. 2011) (per curiam); *Vann v. Comm'r of N.Y.C. Dep't of Corr.*, 496 F. App'x 113, 116 (2d Cir. 2012). "An abuse of discretion exists if the district court '(1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions.'" *City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115,

17

119-20 (2d Cir. 2010) (quoting *Lynch v. City of New York*, 589 F.3d 94, 99 (2d Cir. 2009)). A district court's denial of a motion for leave to amend "based on futility" is reviewed *de novo*. *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021). "Proposed amendments are futile if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Thea v. Kleinhandler*, 807 F.3d 492, 496-97 (2d Cir. 2015) (internal quotation marks omitted).

## SUMMARY OF ARGUMENT

The district court made a series of significant errors, both when it denied Plaintiff's Rule 15 motion, and when it dismissed the FAC with prejudice. The court failed to comply with unambiguous precedents of this Court instructing that Rule 15 motions are subject to a "permissive standard . . . consistent with [this Court's] strong preference for resolving disputes on the merits," *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015), and that it is "rare" that a motion under Rule 15(a)(2) should be denied, *Ricciuti*, 941 F.2d at 123; *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). In disregard of this precedent, the district court denied Plaintiff's Rule 15 motion despite the fact that the arguments set forth in Defendants' April 22, 2022 letter did not establish that the Rule 15(a)(2) motion was made in bad faith or that it would prejudice Defendants—the only two grounds

this Court recognizes for denying a motion for leave to amend at this stage of the litigation. The district court denied the Rule 15(a)(2) motion based on what it contended was Plaintiff's failure to follow its prior "deadlines and admonitions." SPA2. This ruling constitutes an abuse of discretion for at least three reasons: *first*, neither of these purported notices instructed Plaintiff that he could not file a Rule 15 motion; *second*, none of the district court's directions were made with sufficient clarity to provide Plaintiff fair notice that it would be improper to file a Rule 15 motion; and *third*, even if these admonishments were clear, prohibiting Plaintiff from thereafter filing any motion under Rule 15 was an error of law constituting an abuse of discretion.

The district court also abused its discretion when it dismissed Plaintiff's FAC with prejudice, basing its dismissal solely on the deficiencies it found in the FAC, and again denying amendment without considering the contents of Plaintiff's proposed SAC. Without making any reference in its opinion to the proposed SAC or Plaintiff's Rule 15(a)(2) motion, the court ruled—based solely on what it deemed to be the "glaring deficiencies" in the FAC—that it would be futile to allow repleading. Because the deficiencies the court identified in the FAC were not incurable, but instead stemmed from the failure to plead elements of the claim or to provide factual details, they were not necessarily fatal. Because there was a set of facts under which Plaintiff's allegations would state a claim, the district

19

court should have given him an opportunity to amend, and thus it was error to dismiss with prejudice. *See Loreley Fin.*, 797 F.3d at 190 ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").

## ARGUMENT

## I. THE DISTRICT COURT'S DENIAL OF PLAINTIFF'S RULE 15(a)(2) MOTION TO AMEND SHOULD BE VACATED

"Rule 15(a) provides that leave to amend 'shall be freely given when justice so requires' and it is rare that such leave should be denied." *Ricciuti*, 941 F.2d at 123 (citation omitted). Any denial of amendments pursuant to Rule 15(a)(2) without justification is "inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The rule of decision in this Circuit "is to allow a party to amend its complaint unless the *nonmovant demonstrates* prejudice or bad faith." *City of New York v. Grp. Health Inc.*, 649 F.3d 151, 157 (2d Cir. 2011) (emphasis added); *see also Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (holding that leave to amend should not be denied "in the absence of a showing by the nonmovant of prejudice or bad faith").

The district court did not require Defendants to brief any opposition to Plaintiff's Rule 15(a)(2) motion, instead directing them to submit a letter stating whether a meet and confer occurred and setting forth Defendants' position on

Plaintiff's motion for leave to file the proposed SAC.  JA1337.  Defendants made

no showing of bad faith or prejudice, and as a result the court had no support for

any finding of bad faith or prejudice.  The court explained its ruling in the

following three short sentences:  "For much the reasons given by defendants, the

Court denies plaintiff's motion.  Permitting plaintiff to amend anew would reward

plaintiff for disregarding the Court's deadlines and admonitions.  It would also

disrespect the legitimate interests of opposing parties, the Court, and the public in

the orderly and efficient progress of this litigation."  SPA2.  To the extent that

these sentences are interpreted as a finding of bad faith or prejudice, the district

court clearly erred, disregarding the standards under which bad faith and prejudice

are evaluated.  To the extent that these sentences are not a finding of bad faith or

prejudice, and the district court denied the motion for violations of its "deadlines

and admonitions," the court "applie[d] an incorrect legal standard"—and misread

the record—and its order must be vacated.  *Prayze FM v. FCC*, 214 F.3d 245, 249

(2d Cir. 2000); *see also Golden Feather Smoke Shop*, 597 F.3d at 119-20 (district

court abuses its discretion by ruling on an erroneous view of the law).

## A. The Proposed Amendment Did Not Unduly Prejudice Defendants and Was Made in Good Faith

### 1. Prejudice

There was no factual basis on which the district court could find that

granting Plaintiff's Rule 15(a)(2) motion would unfairly prejudice Defendants.  To

the extent that the district court's April 25, 2022 order can be read as denying leave to amend because of unfair prejudice to Defendants, that finding constitutes an abuse of discretion and must be reversed. *See Sumpter v. Skiff*, 260 F. App'x 350, 350 (2d Cir. 2008) ("relying on clearly erroneous findings of fact" constitutes an abuse of discretion). "In determining what constitutes 'prejudice,'" this Court considers "whether the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (internal quotation marks omitted).

Permitting Plaintiff to amend would not prejudice Defendants under this standard.[6] A finding that amendment would cause undue prejudice is not appropriate prior to the start of discovery. *See*, *e.g.*, *Alan Guttmacher Inst. v. McPherson*, 616 F. Supp. 195, 210 (S.D.N.Y. 1985) ("Because the case remains . . . at a pre-discovery stage, I cannot see either delay or purported prejudice to the [defendant] as justifying . . . a denial [of leave to amend]."), *aff'd*,

---

[6] Under Second Circuit precedent, the district court was required to evaluate the extent of any prejudice to Defendants. *See State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (holding that leave to amend may be properly denied on account of "the resulting prejudice *to the opposing party*") (emphasis added). Therefore, to the extent the district court based its ruling on Plaintiff's "disrespect" for the legitimate interests of "the Court[] and the public," SPA2, it applied criteria that have never been recognized in this Circuit.

805 F.2d 1088 (2d Cir. 1986). Discovery had not yet commenced—in fact, the district court had denied Plaintiff's request for early discovery. In the context of resolving litigation that could go on for months, if not years, any delay resulting from the amendment would have been measured in weeks.

Because discovery had not commenced, the only unfair prejudice Defendants faced was the expense of filing a new motion to dismiss. But "mere allegations of additional time, effort, or resources to respond to a newly amended complaint typically do not amount to the kind of 'substantial prejudice' that warrants denying a motion for leave to amend." *Baker v. Bensalz Prods., Inc.*, 2021 WL 4267594, at *2 (S.D.N.Y. Sept. 20, 2021). Further, Plaintiff attempted in good faith to limit any prejudice to Defendants by offering to consent to an extension of Defendants' pending motion to dismiss briefing—an offer Defendants did not take up. JA1342.

### 2. Bad Faith

Nor was there any basis for the district court to find that Plaintiff acted in bad faith. "Bad faith exists when a party attempts to amend its pleading for an improper purpose." *Azkour v. Haouzi*, 2012 WL 3667439, at *2 (S.D.N.Y. Aug. 27, 2012). "[C]ourts generally reject conclusory allegations of bad faith when evaluating a motion to amend." *Underwood v. Roswell Park Cancer Inst.*, 2017 WL 1593445, at *4 (W.D.N.Y. May 2, 2017); *see also Agerbrink v. Model Serv.*

23

*LLC*, 155 F. Supp. 3d 448, 453 (S.D.N.Y. 2016) (holding that a party's argument that a motion to amend was made tactically in bad faith was "exactly the type of conclusory allegation of bad faith that courts consistently reject"). Neither Defendants nor the court set forth any example of the kind of bad faith or dilatory conduct that warranted denial of leave to amend. *See*, *e.g.*, *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293-94 (1938) (denying leave to amend on grounds of bad faith where plaintiff attempted by amendment to destroy the federal court's removal jurisdiction over the case so that the case would be remanded).

On the contrary, Plaintiff acted in good faith in filing his motion to amend. Plaintiff's new counsel filed notices of appearance just two days before the March 10, 2022 conference, and only one month before Plaintiff submitted his Rule 15 motion. Dkt. Nos. 90, 91. Importantly, new and existing counsel both advised the court at the March 10, 2022 conference that Plaintiff was considering whether to amend. JA800, JA802. Counsel thereafter worked diligently to "pursu[e] and receiv[e] information that was central" to the proposed SAC. JA1342. Counsel kept the court and Defendants apprised of its intent to amend. JA1342. Counsel expressly informed the court on April 4, 2022 that an amendment would be forthcoming, JA854, and thereafter informed Defendants about the status of the amendment, JA1342. The desire of Plaintiff's new counsel to investigate, and then

24

pursue, all factual and legal claims available to Plaintiff, and to revisit the existing litigation strategy based on newly obtained evidence, does not constitute bad faith. Rather, these actions reflect counsel's obligation to zealously advocate for their client's interests.

Counsel moved expeditiously to investigate the facts and to draft the proposed SAC. Approximately one month after the conference, counsel had drafted and filed a detailed, 63-page complaint that significantly revised the FAC.[7] This is not "undue delay." *See Martell Strategic Funding LLC v. Am. Hospitality Acad.*, 2017 WL 2937649, at *2 (S.D.N.Y. July 10, 2017) ("[C]ourts commonly find that a party acts diligently if it seeks leave to amend within approximately two months of acquiring information of a new claim or defense."); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 201-02 (2d Cir. 2007) (affirming district court's denial of leave to amend where "[p]laintiffs sought to amend their complaint after an inordinate delay" of "more than seven months" and where "discovery had closed, defendants had filed for summary judgment, and nearly two years had passed since the filing of the original complaint").

---

[7] After notifying the district court and Defendants of his intent to seek leave to amend, JA854, Plaintiff's counsel sought to meet and confer with Defendants in part to propose an extension to the motion to dismiss briefing schedule, JA1342. Plaintiff's counsel did not share the proposed SAC with Defendants at that time because the proposed SAC was not yet complete.

Furthermore, Plaintiff moved to amend in order to pursue a new litigation strategy, based on new information involving new and different theories of Defendants' liability under the federal racketeering laws. *First*, after filing the FAC, Plaintiff obtained new information that demonstrated that Defendants' illegal conduct was both more extensive and involved different predicate acts than was alleged in the FAC. *See Macias v. Ocwen Loan Servicing, LLC*, 718 F. App'x 32, 37 (2d Cir. 2017) (holding that there is no "bad faith" where a party moves to amend to "cure any deficiencies in his existing claims"); *Guadagno v. M.A. Mortenson Co.*, 2018 WL 4870693, at *5 (W.D.N.Y. Oct. 2, 2018) (holding that a party has good cause to amend "by moving to amend promptly after the discovery of new evidence") (quoting *Valentin v. City of Rochester*, 2016 WL 5661729, at *6 (W.D.N.Y. Sept. 30, 2016)); *Fontaine v. Permanent Mission of Chile to United Nations*, 2019 WL 2482374, at *6 (S.D.N.Y. June 14, 2019) ("[D]efendants fail to explain how plaintiff's moving to amend her complaint to cure these purported deficiencies was improper or somehow amounted to bad faith.").

*Second*, after filing the FAC Plaintiff retained new counsel who determined, along with Plaintiff's existing counsel, that the FAC did not optimally set forth Plaintiff's claims. Counsel determined that the best course of action was to amend the complaint in order to, among other things, address certain pleading deficiencies highlighted for the first time in the newly-added Defendants' motions to dismiss—

including by adding new information that had come to light since the FAC was
filed. *See*, *e.g.*, *Baker*, 2021 WL 4267594, at *2 ("[T]he Court agrees with the
Plaintiffs that the precise circumstances of this litigation—and in particular, the
fact that new counsel entered an appearance and wishes the opportunity to raise all
relevant factual and legal claims in the [amended complaint]—warrant granting the
motion [for leave to amend].").  These are valid, good faith reasons to seek leave to
amend, and there is no indication the district court recognized, much less
considered them, in denying the Rule 15 motion.

Because there would have been no prejudice to Defendants in permitting
Plaintiff to amend, and because he did not move to amend in bad faith, the district
court abused its discretion in denying the Rule 15 motion.

### B. The District Court Abused Its Discretion in Basing Its Order on Plaintiff's Purported Disregard for "Deadlines and Admonitions" It Never Issued

The principal explanation the district court gave for denying Plaintiff's Rule
15 motion was that permitting an amendment "would reward plaintiff for
disregarding the Court's deadlines and admonitions."  SPA2.  Basing its decision
on this rationale was an abuse of discretion for two reasons.  *First*, as discussed
above, the only proper reasons for denying a Rule 15 motion under this Circuit's
precedents are bad faith or prejudice.  *Second*, the court erred in concluding that
Plaintiff had disregarded its "deadlines and admonitions."  The record shows

27

unambiguously that Plaintiff did not disregard any order or directive of the district court when he filed his Rule 15 motion, because the district court never imposed any "deadlines and admonitions" instructing Plaintiff that he could not file a Rule 15(a)(2) motion.

The Federal Rules of Civil Procedure establish a mechanism for setting a deadline to amend the pleadings. That mechanism is Rule 16, which permits (indeed, requires) the district court to "issue a scheduling order," Fed. R. Civ. P. 16(b)(1), which "limit[s] the time to join other parties, amend the pleadings, complete discovery, and file motions," Fed. R. Civ. P. 16(b)(3)(A). Once a district court has carried out that procedure, Rule 15's liberal standards for amendment give way to Rule 16's "good cause" standard. *See*, *e.g.*, *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set *in the scheduling order* where the moving party has failed to establish good cause.") (emphasis added).

In this case, the district court never issued a Rule 16 scheduling order. Its January 7, 2022 order, JA403-404, which it later referred to as an "amend or oppose" order, merely recited the 21-day deadline for Plaintiff to amend his complaint as of right under Federal Rule of Civil Procedure 15(a)(1)(B). That order did not set a deadline to "amend the pleadings," Fed. R. Civ. P. 16(b)(3)(A).

28

Nor did the January 7 order contain the other required elements of a Rule 16 order such as deadlines to "join other parties, . . . complete discovery, and file motions." *Id*. Absent a Rule 16 order, Plaintiff "only needed the court's leave under Rule 15(a)(2)" to amend his complaint; and he properly sought that leave "by filing [his] motion for leave to amend." *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (holding that an order that "set [a] deadline . . . for amending *without* leave of court" but that "set no expiration date after which all amendments were prohibited" did not "trigger[] the stricter Rule 16(b)(4) 'good cause' standard" for amendment).

The January 7 order's statement that "[n]o further opportunities to amend will *ordinarily* be granted," JA403 (emphasis added), does not change that result. Given the governing law, the most reasonable interpretation of this phrase was that any additional amendments would require Plaintiff to seek leave to amend pursuant to Rule 15(a)(2), and to demonstrate that "justice so require[d]" such an amendment. That language did not instruct Plaintiff that he could not later seek a further amendment under Rule 15(a)(2). Nor could it: the district court had no power to issue an order that disregarded Rule 15 and Second Circuit precedent in order to impose different, more onerous restrictions on Plaintiff's right to amend. *See Carlisle v. United States*, 517 U.S. 416, 426 (1996) (courts lack "the power to develop rules that circumvent or conflict with the Federal Rules"); *Bank of Nova*

29

*Scotia v. United States*, 487 U.S. 250, 255 (1988) ("federal courts have no more discretion to disregard [a] Rule's mandate than they do to disregard constitutional or statutory provisions").

Permitting district courts to alter the Rule 15(a)(2) standard through an order stating that leave will not "ordinarily" be granted would run counter not only to the Rule's language, but also to its underlying policy. *See Thompson v. New York Life Ins. Co.*, 644 F.2d 439, 444 (5th Cir. 1981) ("The policy behind [the rule concerning amendment of pleadings] is to freely allow amendments unless the rights of the adverse party would be unduly prejudiced. . . . This policy is certainly strongest where the motion challenged is the first motion to amend."). That policy is directly at issue in this case. No doubt the district court's denial of leave reflected its sincere belief that the "legitimate interests of opposing parties, the Court, and the public in the orderly and efficient progress of this litigation," SPA2, were best served by providing one opportunity to amend under Rule 15(a) and foreclosing all others. But the Federal Rules require all judges to apply the same "lenient standard," *Parker*, 204 F.3d at 340, to all requests for amendment that come before them.

The second of the so-called "deadlines and admonitions" on which the district court relied was a remark the court made at the March 10, 2022 status conference. The court claimed in its April 25, 2022 order that it "specifically

admonished counsel that if plaintiff chose to respond to the motions to dismiss, he was foregoing his opportunity to . . . amend." SPA1. But the conference transcript shows that the court never made any such admonition, much less gave Plaintiff fair notice that if he opposed Defendants' motions to dismiss the FAC (as required by the briefing schedule on the FAC), he was forever precluded from filing a Rule 15(a)(2) motion. The context of the court's so-called "admonition" makes clear that its remarks had nothing to do with restricting Plaintiff's rights to seek amendment under Rule 15(a)(2).

The "admonition" to which the district court referred was part of a discussion about whether Plaintiff had an amendment as a matter of course against newly-named Doe Defendants in the FAC pursuant to Rule 15(a)(1). Plaintiff's counsel stated that Plaintiff was considering amendment with respect to Harris and Rubenstein, the Defendants named for the first time in the FAC, and whether that amendment could be brought pursuant to Rule 15(a)(1). JA800. The court addressed that issue, noting that Harris and Rubenstein were the John Does named in the original complaint. JA800-801. Plaintiff's counsel responded that he was not prepared to argue at that time the legal question of whether Plaintiff had a Rule 15(a)(1) amendment with respect to the former Doe Defendants. JA800. After a short discussion of the briefing schedule, the court returned to the question of whether Plaintiff would oppose the motions to dismiss the FAC, or file an

31

amendment pursuant to Rule 15(a)(1), stating "[i]f you are responding, you are presumably foregoing, then, the decision to seek electively the right to amend." JA802. Plaintiff's counsel responded: "We would like to use that time period in part to decide whether our appropriate response is to oppose the motions to dismiss or whether, in light of the new evidence we have received, which does change certain critical facts, we should seek the Court's permission to amend, even if we don't have an amendment as of right." JA802.

The district court's question regarding Plaintiff's intent to "seek electively the right to amend," a clear reference to Rule 15(a)(1), was the admonition the court referenced in later denying Plaintiff's Rule 15(a)(2) motion. But it is obvious from the transcript that the court's remark was not an "admonition," much less an order to Plaintiff, that if he opposed the motions to dismiss the FAC he was prohibited thereafter from seeking leave to amend pursuant to Rule 15(a)(2). First, the remark was phrased *as a question* to Plaintiff's counsel, which hardly constitutes an "admonition," much less an order. More importantly, as the context makes clear, the colloquy between the court and Plaintiff's counsel was centered on the question of whether Plaintiff could amend *as of right* under Rule 15(a)(1) with respect to the Doe Defendants named for the first time in the FAC. The district court's question—which it later suggested was an "admonition"—was merely confirming that Plaintiff would forego his right to amend as a matter of

course under Rule 15(a)(1) with respect to the former Doe Defendants if he filed an opposition to the former Doe Defendants' motions to dismiss. The court's colloquy with Plaintiff makes clear that it had nothing to do with the possibility that Plaintiff might later file a Rule 15(a)(2) motion for leave to amend.

The district court's remark was not therefore an order prohibiting Plaintiff from seeking leave to amend under Rule 15(a)(2); nor could it have been. Such an order would be plainly inconsistent with Rule 15 and its liberal standards for amendment. Rule 15 directs that a court must "freely give leave when justice so requires," and contemplates that additional amendments may be made up to and even during trial, where appropriate. Fed. R. Civ. P. 15(b). If the district court had issued an order stating that if Plaintiff opposed the motions to dismiss the FAC, he was forever forfeiting his right to move under Rule 15, such an order would have been flatly unlawful.

Plaintiff's counsel's response to the district court's question makes clear that she also interpreted the court's remark as a question about amendment under Rule 15(a)(1), and that she responded by alerting the court that Plaintiff was considering amending under Rule 15(a)(2): "We would like to use that time period in part to decide whether our appropriate response is to oppose the motions to dismiss or whether, in light of the new evidence we have received, which does change certain critical facts, we should seek the Court's permission to amend, *even if we don't*

33

*have an amendment as of right*.  And we would do that within that time period."  JA802 (emphasis added).  The district court then indicated that it recognized that Plaintiff might later seek to file a Rule 15(a)(2) amendment, stating:  "Be that as it may, if the complaint may yet even change, if you are proposing to amend, why should you get discovery before all of this is sorted out?  We are not only talking about seeking discovery before a motion to dismiss is resolved; you are talking about seeking discovery before an amended complaint is decided upon."  JA802.

If the district court had intended at the time to foreclose any future right to amend, it would not have referred to the possibility that "the complaint may yet even change."  Similarly, the court stated at the close of the conference:  "As a final matter, and this is not necessary to the decision, I will note that plaintiff's counsel floated the possibility of seeking leave to file a third complaint, a second amended complaint.  By no means by addressing this am I indicating that that would be granted, but should an amended complaint, yet a new one, be sought and authorized, that would be yet another reason to defer discovery."  JA851-852.  That statement clearly conveyed to counsel that it was possible that "leave to file a . . . second amended complaint" would "be sought and authorized," making it impossible to read the court's earlier statement as an admonishment that no Rule 15(a)(2) motion could later be filed.

34

In sum, the district court denied Plaintiff's April 18, 2022 Rule 15(a)(2) motion on the basis of counsel's failure to respect deadlines and admonitions that the court never gave. The transcript makes clear that Plaintiff's counsel alerted the court to the possibility that Plaintiff might seek leave under Rule 15(a)(2) to amend his complaint. And the court was silent when, immediately after Plaintiff filed his opposition to Defendants' motions to dismiss on the date required by the court's March 14, 2022 order, Dkt. No. 96, Plaintiff expressly informed the court that he would move for leave to amend. JA854 ("We write . . . to inform the Court that Plaintiff, pursuant to Federal Rule of Civil Procedure 15, intends to seek leave to file a Second Amended Complaint.").

Compounding this error, the district court never offered Plaintiff an opportunity to respond to Defendants' letter opposing leave to amend. Defendants' letter, JA1338-1340, on which the district court relied in denying Plaintiff's Rule 15 motion, mischaracterized the status conference colloquy described above. The letter omitted all references to those portions of the transcript set out above, which made the context of the court's remarks clear. Defendants thus implied—incorrectly—that the court had entered an order prohibiting Plaintiff from amending his complaint if he opposed the motions to dismiss the FAC. The court did not offer Plaintiff any opportunity to reply. Instead, the court merely accepted the misrepresentations in Defendants' letter,

35

SPA2 (denying motion "[f]or much the same reasons given by defendants"), and then later directed—when Plaintiff attempted to clarify the record—that future submissions would be unproductive, JA1345.

Those actions violated the text and policy of Rule 15 and so exceeded the district court's discretion. Accordingly, this Court should vacate the denial of Plaintiff's Rule 15 motion and remand to permit Plaintiff to file the proposed SAC.

## II. THE DISTRICT COURT ERRED AGAIN WHEN IT CONCLUDED, WITHOUT ADDRESSING THE CONTENTS OF THE PROPOSED SAC, THAT AMENDMENT WOULD BE FUTILE

The district court erred again by refusing to consider the proposed SAC before dismissing the FAC with prejudice, based solely on its conclusion that the FAC was so deficient that amendment would be futile. After the court denied Plaintiff's motion for leave to amend on April 25, 2022, the parties finished briefing Defendants' motions to dismiss the FAC. Dkt. Nos. 112, 113, 114, 115. The court dismissed the FAC with prejudice. In a footnote, the court found the FAC's claims "deficient in fundamental respects, and thus [found] that it would be futile to allow repleading." SPA64. The district court made no reference to the proposed SAC in the footnote or otherwise. Nothing in the court's ruling recognized that the proposed SAC reflected the pursuit of a new legal theory supported by new facts. The court's obvious failure to consider the proposed SAC

36

when determining whether any amendment would be futile was an abuse of discretion.

### A.    The Court Erred When It Dismissed the FAC with Prejudice

"[W]hen a motion to dismiss is granted, 'the usual practice is to grant leave to amend the complaint.'" *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (per curiam) (quoting *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)). "Although the decision whether to grant leave to amend is within the discretion of the district court, refusal to grant leave must be based on a valid ground." *Ronzani*, 899 F.2d at 198; *see also Brook v. Simon & Partners LLP*, 783 F. App'x 13, 16 (2d Cir. 2019) (holding that the district court abused its discretion where it denied leave to amend "without either addressing [p]laintiffs' request or determining that amendment would be futile").

A complaint may be dismissed with prejudice on futility grounds only where it is clear that no possible amendment could save the complaint. *See Panther Partners, Inc. v. Ikanos Comm'cns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (holding that, in determining whether an amendment would be futile, a district court should consider not only a proposed pleading before it, but also "all possible amendments"). Although the Second Circuit has not set out a uniform standard for evaluating when dismissal with prejudice is appropriate, it has found that it is an abuse of discretion to dismiss a complaint with prejudice when the reasons the

37

district court gave for dismissal are "not necessarily fatal, but instead stem from either the failure to plead a necessary element of a claim or to provide details sufficient to support a plausible claim." *Kairam v. W. Side GI, LLC*, 793 F. App'x 23, 28 (2d Cir. 2019). Additionally, other circuits have held that dismissal without leave to amend is proper only where the complaint is incurable. *See*, *e.g.*, *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment."); *Bisciglia v. Kenosha Unified Sch. Dist. No. 1*, 45 F.3d 223, 230 (7th Cir. 1995) (reversing the denial of leave to amend because the record was not clear that the plaintiff could state no set of facts upon which relief can be granted).[8]

The district court erred because, in finding that "it would be futile to allow repleading," SPA64, it necessarily failed to consider whether there were any "possible amendments," *Panther Partners*, 347 F. App'x at 622, that might

---

[8] When a claim is dismissed under Rule 9(b), this Court has admonished that a plaintiff should be permitted an opportunity to replead at least once when his complaint is dismissed. *See ATSI Comm'cns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) ("District courts typically grant plaintiffs at least one opportunity to plead fraud with greater specificity when they dismiss under Rule 9(b)."); *Luce v. Edelstein*, 802 F.2d 49, 56-57 (2d Cir. 1986) ("Complaints dismissed under Rule 9(b) are almost always dismissed with leave to amend.") (internal quotation marks omitted). Here, the district court dismissed the FAC in part because of a failure to satisfy Rule 9(b) with respect to certain allegations. SPA54.

plausibly allege facts establishing that Defendants engaged in a pattern of racketeering activity in furtherance of a RICO enterprise. The district court's speculation that Plaintiff could not sufficiently allege a violation of civil RICO—uninformed by any evaluation of the new factual allegations or new legal theories in the proposed SAC—was clearly erroneous. In one of its most recent decisions reaffirming the principle that amendment should be granted liberally, this Court held that, as here, a district court erred when it failed to consider a plaintiff's proposed second amended complaint. *See Bensch*, 2 F.4th at 80 (holding that the district court "exceeded its discretion" by denying a motion for leave to amend as futile without considering the proposed amendment). The district court in *Bensch* abused its discretion by "offering no analysis of the additional allegations that [plaintiff] proposed to include in his Second Proposed Amended Complaint and merely asserting that *both* proposed amended complaints fail to set forth the substantive facts necessary to suggest absence of fault and make limitation of liability possible." *Id.* (internal quotation marks omitted).

The district court's failure to consider not only "possible amendments," but also a filed proposed SAC, reflects a significant error. This Court's decision in *Bensch* compels the conclusion that the district court was required to analyze the sufficiency of the proposed SAC and not merely speculate that it would be futile to allow repleading. The district court thus erred when it assumed that because it

39

found the FAC to be "glaringly" deficient, it necessarily followed that any amendment would have been futile. That is precisely the error committed by the district court in *Bensch*. The court's decision was an error of law that constituted a *per se* abuse of discretion.

*Bensch* and other circuit precedent make clear that the district court's disregard of the proposed SAC constitutes an abuse of discretion, particularly because Plaintiff's proposed SAC was filed well in advance of the court's dismissal with prejudice. In *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam), the district court dismissed the plaintiff's complaint without granting leave to replead. The plaintiff then moved for reconsideration, and *for the first time* "previewed the proposed amendments in a fifteen-page declaration accompanying" the motion. *Id.* The district court issued a "brief order" denying the request to replead on procedural grounds. *Id.* This Court recognized that when "a party does not seek leave to file an amended complaint until *after* judgment is entered, Rule 15's liberality must be tempered by considerations of finality," *id.* (emphasis added); this Court nonetheless reversed the district court—which had not engaged in any reasoned analysis of the proposed changes—for abusing its discretion by denying leave to amend based solely on the timing of the motion. *Id.* And in *Brook* this Court acted in accord with Rule 15's liberal approach to amendment by taking notice of "statements by [p]laintiffs'

40

counsel made at oral argument in opposing the motion to dismiss, suggest[ing] that amendment may not be futile." 783 F. App'x at 16 (holding "the [d]istrict [c]ourt exceeded the proper bounds of its discretion by directing that the case be closed and judgment issue without giving [plaintiffs] an effective opportunity to amend"). If district courts are obliged to consider statements at oral argument (*Brook*) and post-judgment declarations (*Williams*) before denying a Rule 15(a)(2) motion, it necessarily follows that it was error for the district court to make a futility finding without considering the proposed SAC.

The district court's citation to two readily distinguishable Second Circuit cases as providing support for its dismissal with prejudice only further confirms that the court erred. In support of its futility finding, the court cited *Albany Insurance Co. v. Esses*, 831 F.2d 41, 45 (2d Cir. 1987), for the proposition that a district court may deny leave to amend as futile. SPA64. But in *Albany*, the Court *considered the proposed amended complaint* before determining that it did not remedy the pleading deficiencies in the prior complaint. If anything, *Albany* reinforces Plaintiff's argument that it is error for a court to ignore a proposed amended complaint before making a judgment on futility. The other Second Circuit case the district court cited, *Cuoco v. Moritsugo*, 222 F.3d 99 (2d Cir. 2000), is equally inapposite. There, the district court denied a *pro se* plaintiff the chance to replead after dismissing the plaintiff's complaint. On appeal, however,

41

the plaintiff's counsel represented to this Court that the plaintiff had no new material that would cure the deficiencies in the dismissed complaint. That is precisely the opposite of the situation here. Plaintiff filed his Rule 15(a)(2) motion because he believed it would allow him to pursue a new litigation strategy based on new evidence that supported new legal theories that were not included in the FAC. There is no authority to support the district court's dismissal of the proposed SAC as futile without even considering the contents of the proposed complaint.

This Court should reverse the district court's order to the extent that it dismissed the case with prejudice and remand with instructions to evaluate Plaintiff's Rule 15(a)(2) motion in accordance with Second Circuit law.

## B. The Proposed SAC Included Significant New Allegations That the District Court Should Evaluate in the First Instance

In dismissing the FAC with prejudice, the district court assumed, based solely on the deficiencies in the FAC, that *any* amendment would be futile. The court made that decision without any analysis of the substantial revisions made between the FAC and the proposed SAC. That was an abuse of discretion.

The following sets forth some non-exhaustive examples of the significant revisions to the FAC that the district court never addressed in its April 25, 2022 order and its June 30, 2022 dismissal with prejudice. The enterprise alleged in the FAC focused on providing support to and advancing Ganieva's extortion scheme—which included sham litigation meant to publicly humiliate Plaintiff—as

42

a tool to remove Plaintiff from Apollo.[9]  The enterprise alleged in the proposed

SAC was significantly different.  The proposed SAC identified an enterprise

comprised of Harris's family office and a cadre of professional advisors who

collectively worked to advance and promote Harris's sprawling business and

financial interests.  JA865-866.  The enterprise was formed long before Harris is

alleged to have engaged in the scheme alleged in the proposed SAC to remove

Plaintiff from Apollo.  JA865-866.  The enterprise involved the participation of

Rubenstein, Harris's lawyers, financial advisors, accountants, public relations

specialists, and members of his family investment office.[10]  JA865-866, JA884.

Ganieva is alleged to have participated in the affairs of the enterprise at an earlier

date than was alleged in the FAC, beginning sometime in fall 2020.  JA873-874.

And, in a dramatic departure from the FAC, the proposed SAC described in detail

a scheme that, at its core, involved previously unasserted predicate acts of mail and

wire fraud intended to defraud the officers and directors of a public company, to

thus deprive Apollo and Plaintiff of money and property, and to force Plaintiff's

resignation from Apollo so that Harris could replace him.  JA879, JA897-899,

JA901-907.

---

[9] *See*, *e.g.*, JA424 ("This is not just the work of one woman.  Ms. Ganieva needed support."); *see also* JA427, JA453.

[10] The proposed SAC also alleges that the enterprise grew to include Ganieva.  JA859-860.

The proposed SAC—the allegations of which must be assumed to be true at this early stage—alleges coordinated criminal activity aimed at defrauding Apollo and its officers and directors through a scheme conducted through a specific enterprise. These allegations are not only facially plausible—taken together, they demonstrate the proposed SAC was more than sufficient to support a finding that amendment of the FAC was not futile.

The district court accordingly erred by relying exclusively on the deficiencies in the FAC to support a finding that *any* amendment would be futile, and by disregarding rather than considering the merits of the proposed SAC. *See Staggers v. Otto Gerdau Co.*, 359 F.2d 292, 296-97 (2d Cir. 1966) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). Rather than evaluating the sufficiency of the proposed SAC for the first time on appeal, without the benefit of a lower court decision to review, this Court should remand the case with an instruction to the district court to analyze the proposed SAC in a manner consistent with this Court's "strong preference for resolving disputes on the merits." *Loreley Fin.*, 797 F.3d at 190; *see also Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001) ("In general, 'a federal appellate court does not consider an issue not passed on below'") (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)); *Hartford Courant Co. v. Pellegrino*,

44

380 F.3d 83, 90 (2d Cir. 2004) ("In general, we refrain from analyzing issues not decided below.").

## CONCLUSION

For the foregoing reasons, the Court should vacate the district court's decision denying leave to amend and remand for appropriate consideration of Plaintiff's Rule 15(a)(2) motion. In addition, the Court should vacate the district court's dismissal of the FAC to the extent such dismissal was with prejudice.

Dated: September 2, 2022

Susan R. Estrich
ESTRICH GOLDIN LLP
947 Berkeley St.
Santa Monica, CA 90403
Phone: (213) 399-2132
susan@estrichgoldin.com

Respectfully submitted,

*/s/ Reid M. Figel*

Michael K. Kellogg
Reid M. Figel
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
mkellogg@kellogghansen.com
rfigel@kellogghansen.com

*Attorneys for Plaintiff-Appellant Leon D. Black*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Second Circuit Local Rule 32.1(a)(4) and Federal Rule of Appellate Procedure 32(a)(7) because this brief contains 11,008 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point Times New Roman font.

*/s/ Reid M. Figel*
Reid M. Figel