# 22-1524-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

›››‹‹

LEON D. BLACK,

*Plaintiff-Appellant,*

*v.*

GUZEL GANIEVA, WIGDOR LLP,
JOSH HARRIS, STEVEN RUBENSTEIN,

*Defendants-Appellees,*

*and*

JOHN DOES 1-3,

*Defendants.*

_____

*On Appeal from the United States District Court
for the Southern District of New York*

## BRIEF FOR DEFENDANT-APPELLEE WIGDOR LLP

Janice J. DiGennaro
Max Gershenoff
RIVKIN RADLER LLP
*Attorneys for Defendant-Appellee
    Wigdor LLP*
926 RXR Plaza
West Tower, 9th Floor
Uniondale, New York 11556
516-357-3000

## <u>CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Federal Rule of Appellate Procedure 26.1, Defendant Wigdor LLP submits the following corporate disclosure statement: Wigdor LLP does not have a parent corporation and no publicly held corporation owns 10% or more of the stock of Wigdor LLP.

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...................................................................iv

PRELIMINARY STATEMENT ..............................................................1

COUNTERSTATEMENT OF THE ISSUES.............................................3

COUNTERSTATEMENT OF FACTS ....................................................4

      A.   The Parties.........................................................................4

      B.   Ganieva's First-Filed State Court Action Against
          Plaintiff ..........................................................................5

      C.   Plaintiff's Original Complaint .........................................6

      D.   The District Court's First Admonition To Plaintiff.........7

      E.   Plaintiff's First Amended Complaint And The
          Defendants' Motions To Dismiss .....................................8

      F.   The District Court's Second Admonition To Plaintiff...................10

      G.   Plaintiff's Opposition To The Defendants' Motions
          To Dismiss And Untimely Request For Leave To File
          A Second Amended Complaint......................................10

      H.   The District Court Dismisses The FAC With
          Prejudice ......................................................................12

STANDARD OF REVIEW ...................................................................13

SUMMARY OF THE ARGUMENT ....................................................14

ARGUMENT ........................................................................................16

POINT I..............................................................................................16

     PLAINTIFF FAILED TO SHOW GOOD CAUSE
     UNDER FED. R. CIV. PRO. 16(b)(4) FOR
     DISREGARDING THE COURT'S MARCH 10TH
     SCHEDULING ORDER ........................................................16

POINT II .............................................................................................21

     THE DISTRICT COURT DID NOT ABUSE ITS
     DISCRETION AND PROPERLY DENIED
     PLAINTIFF'S MOTION FOR LEAVE TO AMEND
     UNDER RULE 15(a)(2) ........................................................21

     A.    Plaintiff Disregarded The District Court's Deadlines
           And Admonitions ..........................................................21

     B.    Defendants Would Have Been Prejudiced By The
           Untimely SAC ..............................................................28

     C.    Plaintiff Was Dilatory In Seeking Leave To File The
           SAC ..............................................................................31

POINT III ............................................................................................34

     BECAUSE FURTHER LEAVE TO AMEND WOULD
     BE FUTILE, THE DISTRICT COURT PROPERLY
     DISMISSED THE FAC WITH PREJUDICE ........................34

CONCLUSION ....................................................................................39

CERTIFICATE OF COMPLIANCE WITH FRAP 32(a).....................40

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*380544 Can., Inc. v. Aspen Tech., Inc.*,
   07 Civ 1204 (JFK), 2011 U.S. Dist. LEXIS 103951
   (S.D.N.Y. Sept. 14, 2011) ............................................................18, 19

*AEP Energy Services Gas Holding Co. v. Bank of Am., N.A.*,
   626 F.3d 699 (2d Cir. 2010) ................................................................28

*Bank v. GoHealth, LLC*,
   21-1287-cv, 2022 U.S. App. LEXIS 10351
   (2d Cir. Apr. 18, 2022)
   ....................................................................14, 22, 24, 31, 38

*Bay Harbour Mgmt., LLC v. Carothers*,
   474 F. Supp. 2d 501 (S.D.N.Y. 2007) .................................................29

*Bensch v. Estate of Umar*,
   2 F.4th 70 (2d Cir. 2021) ...............................................................36, 37

*Berns v. EMI Publ'g, Inc.*,
   95 Civ. 8130 (KTD), 1999 WL 1029711
   (S.D.N.Y. Nov. 10, 1999) ....................................................................32

*Brook v. Simon & Partners LLP*,
   783 F. App'x 13 (2d Cir. 2019) ...........................................................36

*Castro v. City of N.Y.*,
   05 Civ. 593 (LAK)(MHD), 2009 U.S. Dist. LEXIS 63836
   (S.D.N.Y. July 22, 2009) .....................................................................23

*Dietz v. Bouldin*,
   579 U.S. 40, 136 S. Ct. 1885 (2016).....................................................23

*El-Shabazz v. N.Y. Comm. on Character & Fitness for the Second
   Judicial Dep't*,
   428 F. App'x 95 (2d Cir. 2011) ...........................................................36

*Evans v. Syracuse City Sch. Dist.*,
  704 F.2d 44 (2d Cir. 1983) ................................................................21

*Farricker v. Penson Dev., Inc.*,
  513 F. App'x 46 (2d Cir. 2013) .........................................................29

*Fioranelli v. CBS Broad., Inc.*,
  15-CV-952, 2019 U.S. Dist. LEXIS 36099
  (S.D.N.Y. Mar. 6, 2019) ..................................................................32

*Grabcheski v. Am. Internat.Grp., Inc.*,
  687 F. App'x 84 (2d Cir. 2017) .........................................................36

*Grochowski v. Phoenix Constr.*,
  318 F.3d 80 (2d Cir. 2003) ...............................................................17

*Holmes v. Grubman*,
  568 F.3d 329 (2d Cir. 2009) .............................................................16

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
  818 F.3d 85 (2d Cir. 2016) ...............................................................27

*Johnson v. City of New York*,
  669 F. Supp. 2d 444 (S.D.N.Y. 2009) ..............................................29

*Kroshnyi v. U.S. Pack Courier Servs.*,
  771 F.3d 93 (2d Cir. 2014) ...............................................................21

*Lehmann v. OHR Pharm., Inc.*,
  20-4185-cv, 2021 U.S. App. LEXIS 37187
  (2d Cir. Dec. 16, 2021) ....................................................................23

*Lynch v. Nat'l Prescription Adm'rs, Inc.*,
  795 F. App'x 68 (2d Cir. 2020) .........................................................29

*McNeil v. Yale Chptr.*,
  21-639-cv, 2021 U.S. App. LEXIS 33750
  (2d Cir. Nov. 15, 2021) ....................................................................13

*In re Merrill Lynch Ltd. Partnerships Litig.*,
  154 F.3d 56 (2d Cir. 1998) ...............................................................26

*Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*,
  970 F.3d 133 (2d Cir. 2020) ...............................................................22

*Parker v. Columbia Pictures Indus.*,
  204 F.3d 326 (2d Cir. 2000) ...............................................................23

*Pasternack v. Shrader*,
  863 F.3d 162 (2d Cir. 2017) ...............................................................16

*PI, Inc. v. Quality Prods.*,
  907 F. Supp. 752 (S.D.N.Y. 1995) ....................................................31

*Ramsay-Nobles v. Keyser*,
  16 Civ. 5778 (CM), 2018 U.S. Dist. LEXIS 214472
  (S.D.N.Y. Dec. 18, 2018) ...................................................................32

*Ritchie Capital Mgmt., L.L.C. v. GE Capital Corp.*,
  821 F.3d 349 (2d Cir. 2016) ...............................................................26

*Rosner v. Star Gas Partners, L.P.*,
  344 F. App'x 642 (2d Cir. 2009) ........................................................33

*Sacerdote v. N.Y. Univ.*,
  9 F.4th 95 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022) ........18

*Sehgal v. Aggarwal*,
  20-CV-4577 (JS)(ARL), 2021 U.S. Dist. LEXIS 154043
  (E.D.N.Y. Aug. 16, 2021) ...................................................................30

*Smith v. Cuomo*,
  306 F. App'x 645 (2d Cir.), *cert. denied*, 558 U.S. 933,
  130 S. Ct. 152 (2009) ..........................................................................35

*Soojung Jang v. Trs. of St. Johnsbury Acad.*,
  771 F. App'x 86 (2d Cir. 2019) ..........................................................13

*Soto v. Disney Severance Pay Plan*,
  26 F.4th 114 (2d Cir. 2022) .................................................................34

*State Teachers Ret. Bd. v. Fluor Corp.*,
  654 F.2d 843 (2d Cir. 1981) ...............................................................28

*Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland*,
  09-CV-4622 (CS), 2010 U.S. Dist. LEXIS 125394
  (S.D.N.Y. Nov. 24, 2010) ........................................................18, 23, 30

*Werking v. Andrews*,
  526 F. App'x 94 (2d Cir. 2013) ..........................................................38

*Williams v. Citigroup Inc.*,
  659 F.3d 208 (2d Cir. 2011) ...............................................................22

*Wilson v. Merrill Lynch & Co.*,
  671 F.3d 120 (2d Cir. 2011) ...............................................................14

## Statutes and Other Authorities

18 U.S.C. § 1962(c) and (d) ....................................................................6

Fed. R. Civ. P. Rule 11 .........................................................1, 7, 12, 31

Fed. R. Civ. P. Rule 12(b)(6) ........................................................12, 13

Fed. R. Civ. P. Rule 15(a)(1) .................................................................25

Fed. R. Civ. P. Rule 15(a)(2) ........................................................13, 20, 21

Fed. R. Civ. P. Rule 15(b) .....................................................................20

Fed. R. Civ. P. Rule 16 ........................................................16, 17, 18, 19

Fed. R. Civ. P. Rule 16(b) .....................................................................18

Fed. R. Civ. P. Rule 16(b)(4) ........................... 3, 14, 16, 17, 18, 19, 20

Individual Judge Rule 3(D) ...................................................................27

Individual Judge Rule 3(D)(ii) ..............................................................27

3-16 Moore's Federal Practice - Civil § 16.13 (2016)............................16

## PRELIMINARY STATEMENT

After leaving his private equity firm once it was publicly revealed that he paid more than $150,000,000 to notorious criminal Jeffrey Epstein for purported "tax" advice (JA547, JA485-487), Plaintiff Leon Black ("Plaintiff" or "Black") apparently wanted to rehabilitate his reputation by pointing the finger at others. And so – with billions of dollars still at his disposal – Black launched a series of conclusory, defective, and retaliatory "RICO" and "defamation" claims against those he blamed for his self-inflicted misfortune.

At first, Black's targets included Defendant Guzel Ganieva ("Ms. Ganieva"), the plaintiff in a first-filed sexual assault and defamation lawsuit against Black that is currently pending in New York Supreme Court, as well as Ms. Ganeiva's counsel in that first-filed action, Defendant Wigdor LLP ("Wigdor"). According to Black's initial Complaint, Ms. Ganieva and Wigdor were engaged in some vaguely-alleged racketeering conspiracy with a completely unidentified "Funder" and completely unidentified "Flacks", all in order to extort money from Black and "cancel" him. In addition, Black alleged that Ms. Ganieva and Wigdor defamed him, but the only defamation Black alleged amounted to privileged statements made in connection with Ms. Ganieva's first-filed state court action.

After Wigdor and Ms. Ganieva moved to dismiss, and after Wigdor sought Rule 11 sanctions, Black belatedly amended his initial Complaint to drop the RICO

claims against Wigdor (but not against Ms. Ganieva), and to identify Defendant Josh Harris ("Harris") as the purported "Funder" and Defendant Steven Rubenstein ("Rubenstein") as a supposed "Flack". Even so, Black's First Amended Complaint did not remedy the many defects in his initial pleading, despite the fact that Wigdor and Ms. Ganieva's motions to dismiss had – by that point – put Black on clear notice of the defects.

Though the District Court had made it clear that Black would have one opportunity to amend his pleading, and that he would certainly forego any further opportunity to amend if he responded to Defendants' motions to dismiss the First Amended Complaint, Black ignored the Court's deadlines and admonitions. Instead, he opposed the Defendants' motions to dismiss the First Amended Complaint, and then – just four days before Defendants' replies were due – belatedly sought leave to file yet another scandalous and defective Second Amended Complaint, after first refusing to show the proposed Second Amended Complaint to Defendants beforehand.

Against this backdrop, and as discussed more fully below, the District Court was well within its discretion to deny Black's request to file yet another scandalous and defective pleading, to dismiss his specious "RICO" claims with prejudice, and to decline to exercise supplemental jurisdiction over Black's state law claims. The District Court's judgment should be affirmed.

## <u>COUNTERSTATEMENT OF THE ISSUES</u>

1.    Whether the District Court abused its discretion when it denied Black's motion for leave to file a prejudicial Second Amended Complaint ("SAC"), considering that Plaintiff unduly delayed, then sought leave to amend in bad faith and in violation of the District Court's deadlines and admonitions.

2.    Whether the District Court's denial of Plaintiff's motion to amend his Complaint should be affirmed on the independent ground that Plaintiff failed to demonstrate "good cause" under Fed. R. Civ. P. 16(b)(4) for disregarding the Court's March 10, 2022 scheduling order regarding when Plaintiff could file an amended complaint.

3.    Whether the District Court abused its discretion when it dismissed Plaintiffs' First Amended Complaint ("FAC") with prejudice, after determining that the claims in the FAC were "glaringly deficient in fundamental respects" and it was "futile" to allow repleading.

3

## COUNTERSTATEMENT OF FACTS

### A.    The Parties

Plaintiff Leon D. Black is the co-founder and former chairman of the private equity firm Apollo Global Management ("Apollo"), and, as he acknowledges, engaged in an extramarital relationship with Defendant Ganieva. JA 415, JA 440.[1]

Defendant Wigdor is a well-known law firm that, among other things, specializes in cases of sexual harassment and sexual misconduct, and is currently representing Defendant Ganieva in connection with her first-filed, New York State Supreme Court lawsuit against Black for defamation, defamation per se, intentional infliction of emotional distress, and gender-motivated violence, which was filed on June 1, 2021 under Index No. 155262/2021 (the "State Court Action").

Plaintiff's sole claim against Wigdor in the FAC and proposed SAC was that Wigdor's representation of Ganieva in her first-filed state court action somehow amounted to "defamation" – a claim based solely on allegedly "defamatory" statements contained in Ganieva's state court pleadings, and statements allegedly made by Wigdor about Ganieva's state court case. JA 414-472, JA858-920.

Defendant Harris is a former colleague of Plaintiff's at Apollo. According to Plaintiff, Harris wanted to replace him as the CEO of Apollo but was denied the

---

[1] Record references are to the Special Appendix ("SPA__") and Joint Appendix ("JA__").

opportunity to do so. JA 413.

Defendant Rubenstein is a public relations professional. His firm has performed work for Apollo. JA 413.

In addition to his claims against Wigdor in his FAC and proposed SAC, Plaintiff alleged that Ganieva coordinated with Harris and Rubenstein, in some unspecified manner, in an effort to extort Plaintiff. Based on these allegations, Plaintiff attempted to assert civil RICO claims against Ganieva, Harris, and Rubenstein, as well as a breach of contract claim against Ganieva. JA414-472 and JA858-920.

**B.**    <u>**Ganieva's First-Filed State Court Action Against Plaintiff**</u>

In Ganieva's State Court Action[2] she alleges that, beginning in 2008, Plaintiff sexually assaulted her for years, and used his immense wealth and power to intimidate and force her into silence. Ganieva further alleges in the State Court Action that in 2015, after these repeated sexual assaults, she signed – under duress and without being afforded the right to obtain the advice of independent counsel – a purported non-disclosure agreement (the "NDA") with Black. The general terms of the NDA were that Black would pay Ganieva a monthly stipend and forgive his previous loans to her in exchange for Ganieva's silence. Thereafter, Black paid

---

[2] The facts presented here are those alleged in Ganieva's amended complaint in the state court action. JA151-209.

Ganieva each month from late 2015 through March 2021, at which point the payments stopped. The payments stopped in March 2021 because, on March 17, 2021, Ganieva broke her silence regarding Black, and posted on Twitter that he had sexually abused her for years. JA151-209.

The State Court Action goes on to detail how, on April 8, 2021, Bloomberg published an article containing a statement by Black in which he falsely contended that his "affair" with Ganieva was "consensual", and that "any allegation of harassment or any other inappropriate behavior is fabricated". JA151-209. Black also falsely stated to Bloomberg that he supposedly had been "extorted by Ganieva for many years and [that he] made substantial monetary payments to her, based on her threats to go public" about their relationship. *Id.*

On June 1, 2021, as the result of these false and defamatory statements, Ganieva – through her counsel, Wigdor – commenced the State Court Action.

## C.     **Plaintiff's Original Complaint**

In obvious retaliation for Ganieva's first-filed State Court Action, Plaintiff commenced the present action on October 28, 2021, with Ganieva and Wigdor as the only specifically-identified Defendants, in which he asserted causes of action against Wigdor for defamation as well as for civil RICO violations under 18 U.S.C. § 1962(c) and (d).  JA16-JA66.

Thereafter, on December 14, 2021, Wigdor's counsel served Plaintiff's counsel with a Rule 11 motion and a detailed "safe harbor" letter. The safe harbor letter outlined why there was no good faith basis for Plaintiff's RICO and defamation claims against Wigdor. Dkt. No. 56 (Exhibit 1).

On January 4, 2022, Susan Estrich ("Ms. Estrich"), counsel for Plaintiff since the inception of the case[3], sent a letter in which Plaintiff's counsel refused to withdraw Plaintiff's claims against Wigdor, and insisted that the RICO claims filed against Wigdor were somehow meritorious. Dkt. No. 56 (Exhibit 2)

Then, on January 7, 2022, as a result of Plaintiff's refusal to withdraw the Complaint, Wigdor filed its motion to dismiss Plaintiff's first Complaint (JA 352-395) and subsequently filed its Rule 11 motion for sanctions on January 10, 2022. Dkt No. 33.

## D.    The District Court's First Admonition To Plaintiff

On January 7, 2022, shortly after Wigdor filed its motion to dismiss Plaintiff's first Complaint, the District Court explicitly ordered that the Plaintiff "shall file any amended complaint by January 28, 2022", and specified that "[n]o further opportunities to amend will ordinarily be granted." JA403.

Six days later, on January 13, 2022, Plaintiff – after refusing to withdraw its

---

[3] At that time, together with Ms. Estrich, Plaintiff was also represented by the law firm Quinn Emanuel Urquhar & Sullivan, LLP ("Quinn Emanuel").

initial Complaint within the safe harbor period, and forcing Wigdor to file motions to dismiss and for sanctions – belatedly announced his intention to amend. Dkt. No. 35.

## E. Plaintiff's First Amended Complaint And The Defendants' Motions To Dismiss

On January 23, 2022, Plaintiff filed his FAC, which removed the frivolous civil RICO claims against Wigdor, but still asserted his conclusory and baseless defamation claim against Wigdor. JA 414-472.[4]

In particular, distilled to their essence from pages of recrimination, Plaintiff's only allegations against Wigdor in support of his defamation cause of action in the FAC amounted to the following:[5]

(i)     Wigdor represents Ganieva in her State Court Action, and has filed pleadings on her behalf in the State Court Action that supposedly contain false allegations of sexual abuse, sexual intimidation, and sexual assault. JA414-472 (¶¶ 12, 15, 72, 82, 133-149, and passim).

---

[4] On the same day, the Quinn Emanuel attorneys who had been representing Plaintiff moved to withdraw as Plaintiff's counsel in this action. Dkt No. 51. The lawyers from Quinn Emanuel predicated their request to withdraw on a "potential conflict of interest" they somehow first discovered on the due date for Plaintiff's opposition to Wigdor's sanctions motion. Id.

[5] In addition to his claims against Wigdor in his FAC, Black alleged that Ganieva coordinated with Defendants Harris and Rubenstein, as well as unidentified "Flacks", to extort Black. Based on these allegations, Black attempted to plead an association-in-fact racketeering enterprise consisting of Ganieva, Harris, Rubenstein, and unidentified "Flacks", and in turn asserted civil RICO claims against them, as well as a breach of contract claim against Ganieva.

> (ii) At some unspecified times, in some unspecified places, Jeanne Christensen ("Christensen") – a partner at Wigdor – supposedly made statements to mostly unspecified persons:
>
>> (a) "branding" Plaintiff as a "sexual predator";
>>
>> (b) "inviting prosecutors to 'go after' him";
>>
>> (c) accusing Black of "heinous conduct" towards Ganieva and of "intimidating" her; and
>>
>> (d) invoking the #MeToo movement.
>
> (iii) An unidentified person, at an unidentified time, supposedly told another unidentified person, via an unidentified medium, that Black raped a Jane Doe 20 years ago.

JA467-468 (¶ 144).

Based on these allegations – all centering around statements made in the State Court Action or about the State Court Action – Black asserted a claim against Wigdor for defamation per se. JA465-468 (¶¶ 133-149).

On March 4, 2022, Wigdor moved to dismiss Plaintiff's defamation claim, which was the only cause of action in the FAC asserted against Wigdor. Dkt Nos. 85-87.

Likewise, also on March 4, 2022, Wigdor's co-defendants in the case – Rubenstein, Ganieva, and Harris – also moved to dismiss the FAC. Dkt Nos. 80-84, 87-89.

**F.**     **The District Court's Second Admonition To Plaintiff**

On March 10, 2022, the District Court held an initial conference with all parties, to – among other things – discuss "the issue of discovery" and the Defendants' motions to dismiss Plaintiff's FAC. JA757-758.

During this conference, Plaintiff's counsel Reid Figel ("Mr. Figel") and Ms. Estrich raised the possibility of seeking leave to amend Plaintiff's Complaint a second time, and also asked for additional time to respond to the Defendants' motions to dismiss. Upon hearing this, the District Court cautioned Plaintiff's counsel that "[i]f you are responding [to the pending motions to dismiss], you are presumably foregoing, then, the decision to seek electively the right to amend." JA801-802. Ms. Estrich responded that counsel "would like to use that time period in part to decide whether our appropriate response is to oppose the motions to dismiss or whether . . . we should seek the Court's permission to amend, even if we don't have an amendment as of right.  And we would do that within that time period." *Id.* (emphases added).

**G.**     **Plaintiff's Opposition To The Defendants' Motions To Dismiss And Untimely Request For Leave To File A Second Amended Complaint**

On April 4, 2022, Plaintiff filed a single opposition to the Defendants' motions to dismiss, and argued that all of his claims – including his federal RICO claims

against Harris, Ganieva, and Rubenstein, and his state-law defamation claim against Wigdor – were adequately pled. Dkt No. 101.

Two weeks later, on April 18, 2022, Plaintiff moved for leave to file the SAC, despite the fact that the District Court had warned him that he would forego the ability to file a SAC if he opposed the Defendants' motions to dismiss. Dkt Nos. 103, 104. In support of the motion to amend, Plaintiff argued that he had new counsel who wished to raise additional factual and legal claims, and that he supposedly had "discovered" new information in support of his claims. *Id.*

The next day, on April 19, 2022, the District Court ordered the Defendants to file a joint letter setting out whether the parties had met and conferred regarding Plaintiff's motion to file the SAC. JA1337. Defendants then filed a letter on April 22, 2022, in which they informed the District Court that – while counsel for the parties had conferred about the proposed SAC – the meet-and-confer was not meaningful or productive because Black had refused to provide Defendants with a copy of the proposed pleading. JA1338. In their April 22nd letter, the Defendants went on to argue that the Court should deny Plaintiff's request for leave to file a SAC because: (i) the District Court had already warned Plaintiff at the March 10, 2022 conference that if he chose to oppose the Defendants' motions to dismiss, he would forego the right to seek another amendment to the complaint; (ii) the Defendants would be prejudiced if the court granted leave to amend; and (iii) the

proposed amendments were futile because the SAC remained facially defective. JA1338-1340.

On April 25, 2022, the Court denied Plaintiff's motion for leave to amend. In its decision, the District Court noted that it was denying the motion for "much of the same reasons given by defendants". The District Court further explained that "permitting plaintiff to amend anew would reward plaintiff for disregarding the Court's deadlines and admonitions. It would also disrespect the legitimate interests of opposing parties, the Court, and the public in the orderly and efficient progress of this litigation". SPA1-2.

## H.     The District Court Dismisses The FAC With Prejudice

On June 30, 2022, the District Court granted the Defendants' Rule 12(b)(6) motions and dismissed Plaintiff's RICO claims – the sole basis for federal jurisdiction – with prejudice. SPA3-65. The District Court noted that the FAC's RICO claims were "glaringly deficient in fundamental respects" and found it "futile to allow repleading". SPA64 The District Court also declined to exercise supplemental jurisdiction over the FAC's state-law claims – including the defamation claim against Wigdor – and dismissed those claims without prejudice to Plaintiff's right to pursue them in state court. SPA3, SPA64.

That same day, the District Court "narrowly" denied Wigdor's Rule 11 sanctions motion, but noted that Plaintiff's RICO claims against Wigdor in the initial

Complaint "had threadbare factual support and numerous pleading deficiencies".

SPA25, Dkt. No. 121, at p.2.

## STANDARD OF REVIEW

"Although Fed. R. Civ. P. 15(a)(2) provides that leave to amend should be freely given, a district court has discretion to deny a motion to amend on the basis of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc." *McNeil v. Yale Chptr.,* 21-639-cv, 2021 U.S. App. LEXIS 33750 at *8 (2d Cir. Nov. 15, 2021).

In general, an appellate court "reviews the district court's denial of a request for leave to amend for abuse of discretion. An abuse of discretion may consist of an erroneous view of the law, a clearly erroneous assessment of the facts, or a decision that cannot be located within the range of permissible decisions." However, "[i]f the denial of leave to amend is on futility grounds, the [appellate court's] review is de novo." *Id.* (internal quotations omitted).

"Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Soojung Jang v. Trs. of St. Johnsbury Acad.,* 771 F. App'x 86, 88 (2d Cir. 2019).

13

A district court's decision to dismiss a complaint with prejudice rather than granting leave to amend is reviewed for abuse of discretion. *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 139 (2d Cir. 2011).

## SUMMARY OF THE ARGUMENT

Plaintiff appeals two of this District Court's decisions, specifically: (i) the District Court's order denying him leave to file his SAC; and (ii) the District Court's order dismissing his RICO claims with prejudice.

This Court should affirm both of these decisions.

With respect to the District Court's denial of leave to amend, this Court should affirm for two reasons. First, the Court should affirm under Rule 16(b)(4), because the record demonstrates that, during March 10, 2022 initial conference, the District Court gave a clear instruction to Plaintiff as to when he could seek leave to file another amended complaint. Even so, Plaintiff disregarded this instruction, and failed to show "good cause" as to why he should be permitted to make an untimely motion to amend.

Second, even if the Court were to decline to apply Rule 16(b)(4), affirmance is still warranted because the District Court had ample grounds to deny Plaintiff's motion for leave to amend, and its decision to do so was not an abuse of discretion. *See Bank v. GoHealth, LLC*, 21-1287-cv, 2022 U.S. App. LEXIS 10351 at *2 (2d Cir. Apr. 18, 2022)("a district court may in its discretion deny leave to amend "for

*good reason*, including futility, bad faith, undue delay, or undue prejudice to the opposing party.")(emphasis added). For example, the record is clear that: (i) Plaintiff disregarded the District Court's deadlines and admonitions regarding amendment; and (ii) Plaintiff's untimely request for leave to amend, if granted, would prejudice the Defendants.

This Court should also affirm the District Court's dismissal of Plaintiff's RICO claims with prejudice. Contrary to Plaintiff's argument, the District Court was correct in finding that the RICO claims in the FAC were so "glaringly deficient" that any amendment would be futile[6] – especially in light of the fact that Plaintiff already had an opportunity to amend his RICO claims once before – and therefore properly dismissed Plaintiff's RICO claims with prejudice.

Accordingly, both of the District Court's orders should be affirmed.

---

[6] None of the Plaintiff's supposed "new" allegations in the SAC changes this fact.

## ARGUMENT

## POINT I

## PLAINTIFF FAILED TO SHOW GOOD CAUSE UNDER FED. R. CIV. PRO. 16(b)(4) FOR DISREGARDING THE COURT'S MARCH 10TH SCHEDULING ORDER

As this Court has noted:

"Where . . . a scheduling order governs amendments to the complaint," and a plaintiff wishes to amend after the scheduling deadline has passed, the plaintiff must satisfy both [Federal Rules of Civil Procedure] 15 and 16 to be permitted to amend. *See Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009); *see also* 3-16 Moore's Federal Practice - Civil § 16.13 (2016). As a practical matter, that means that where a schedule has limited the time to amend a complaint, the plaintiff who wants to amend must satisfy Rule 16 by showing "good cause" to modify the scheduling order. *See* Fed. R. Civ. P. 16(b)(4).

*Pasternack v. Shrader*, 863 F.3d 162, fn. 10 (2d Cir. 2017).

In this context, it is clear from a review of both the docket and relevant authorities that the District Court's March 10, 2022 admonition to Plaintiff – in which the Court advised Plaintiff's counsel that Plaintiff would forego the right to amend if he first responded to the Defendants' motions to dismiss – constituted a scheduling order subject to Rule 16(b)(4).

In particular, on November 5, 2021, the District Court entered an order setting an "initial pretrial conference" for January 18, 2022. Dkt. No.17. As part of its order, the District Court directed counsel for all parties to: "[c]onfer with each other prior

16

to the conference regarding settlement and each of the other subjects to be considered at a *Federal Rule of Civil Procedure 16 conference". Id.* (emphasis added). Moreover, the District Court ordered the parties to prepare a "Civil Case Management Plan and Scheduling Order in accordance with the Court's individual Rules" in advance of this initial pretrial conference. *Id.*

The January 18th conference was adjourned multiple times – ultimately to March 10, 2022 – but the guidelines for the conference remained the same: It was to be a conference pursuant to Rule 16*,* and the parties were required to submit a "Civil Case Management Plan and Scheduling Order" prior to the conference for the District Court to review. Dkt Nos. 39, 71. On February 18, 2022, the parties did indeed jointly file a "Proposed Case Management Order" in advance of the March 10th conference. Dkt No. 76.

As discussed above, during the March 10th conference, the Court made it clear to Plaintiff that, if he intended to seek leave to further amend his FAC, he had better do so <u>before</u> he responded to the Defendants' motions to dismiss the FAC. This was, at bottom, a scheduling order governing any further requests to amend. Because Plaintiff waited to file his motion to amend until <u>after</u> he responded to the Defendants' motions to dismiss, he was required to show good cause for the belated amendment under Rule 16(b)(4). *See Grochowski v. Phoenix Constr.,* 318 F.3d 80, 86 (2d Cir. 2003)("Where a scheduling order has been entered, the lenient standard

17

under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.' A finding of good cause depends on the diligence of the moving party.") (internal citations omitted); *Sacerdote v. N.Y. Univ.,* 9 F.4th 95, 115 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022)(setting an "expiration date after which all amendments [are] prohibited…. trigger[s] the stricter Rule 16(b)(4) standard."); *380544 Can., Inc. v. Aspen Tech., Inc.,* 07 Civ 1204 (JFK), 2011 U.S. Dist. LEXIS 103951 at *10 (S.D.N.Y. Sept. 14, 2011)(noting that the prerequisite for applying Rule 16 was an order "limit[ing] the plaintiffs' ability to amend their complaint").

Moreover, and contrary to Plaintiff's contention, (App. Br. 29) the fact that an order – such as the District Court's directive during the March 10 conference – is not part of a formal Rule 16 case management and scheduling order is immaterial. *See Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland*, 09-CV-4622 (CS), 2010 U.S. Dist. LEXIS 125394 at *8 (S.D.N.Y. Nov. 24, 2010)(applying the Rule 16(b)(4) standard when assessing plaintiff's request to file an amended complaint where – as here – the court by verbal order set a deadline for the filing of an amended complaint, and holding that it was "immaterial that that deadline was not part of a formal Rule 16 scheduling order", because "the so-ordered deadline served the same purpose as a formal scheduling order, namely to offer a measure of certainty in

pretrial proceedings.")(internal quotations omitted); *380544 Can., Inc., supra* (despite absence of formal Rule 16 scheduling order, the substance of court orders and discovery schedules "explicitly limited the plaintiffs' ability to amend their complaint—the prerequisite for applying Rule 16").

Though Plaintiff was required to show good cause for why he failed to comply with the District Court's instruction to amend <u>before</u> responding to Defendants' motions to dismiss, Plaintiff fails to demonstrate this "good cause". Instead, Plaintiff offers two excuses for why he disregarded the District Court's instructions.

First, Plaintiff argues that the District Court's directive on amendments was unclear or unlawful. (App. Br. 30-34.) Second, Plaintiff argues that his delay was due to the fact that newly retained counsel needed time to "investigate all factual and legal claims available to plaintiff, and to revis[e] the existing litigation strategy based on newly obtained evidence". (App. Br. 24-25.).

For the reasons set forth below, neither of these excuses withstands scrutiny. Rather, it is evident that these excuses are pretexts designed to cover up the real reason why Plaintiff belatedly decided to seek leave to file the SAC: to needlessly draw out this retaliatory and meritless litigation as long as possible to smear the Defendants' reputations.

Simply put, Plaintiff was not diligent in seeking leave to amend and thus has not demonstrated – and cannot demonstrate – "good cause" under Rule 16(b)(4) for

disregarding the District Court's March 10 instruction, and therefore this Court should affirm the District Court's decision.

However, even if this Court declines to find that Rule 16(b)(4) applies, and instead reviews the District Court's decision under Rule 15(b), the Court should still affirm the District Court's denial of leave to amend under Rule 15(a)(2) for the reasons set forth below.

## POINT II

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION AND PROPERLY DENIED PLAINTIFF'S MOTION FOR LEAVE TO AMEND UNDER RULE 15(a)(2)

This Court has emphasized that "[e]xcept when required by the demands of justice in the particular case, … [it] almost invariably defer[s] to the discretion exercised by the trial court [when reviewing a district court's grant or denial of leave to amend]." *Kroshnyi v. U.S. Pack Courier Servs.,* 771 F.3d 93, 109 (2d Cir. 2014), *citing Evans v. Syracuse City Sch. Dist*., 704 F.2d 44, 47 (2d Cir. 1983).

As discussed below, in its April 25th order, the District Court properly exercised its discretion when it denied Plaintiff's motion to amend for "much [of the] same reasons given by the Defendants" in its joint April 22nd letter, including: (i) Plaintiff's "disregard for the Court's deadlines and admonitions; (ii) prejudice, in that permitting an amendment "would also disrespect the legitimate interest" of opposing parties); and (iii) undue delay, *i.e.*, Plaintiff's "11th hour-hour motion for leave to amend". SPA2.

### A. Plaintiff Disregarded The District Court's Deadlines And Admonitions

Plaintiff's central argument for why the Court abused its discretion in denying his motion for leave to amend is that – according to Plaintiff – "the only proper reasons for denying a Rule 15 motion under this Circuit's precedents are bad faith

or prejudice". App. Br. 27. Thus, according to Plaintiff, the District Court's supposed "principal" explanation for denying Plaintiff's motion to amend – "rewarding Plaintiff for disregarding the Court's deadlines and admonitions" – is not a proper reason for denying a Rule 15 motion under this Circuit's precedents. *Id.*

Plaintiff is mistaken, however, as bad faith and prejudice are not the "only proper reasons" recognized by this Court for denying a Rule 15 motion to amend.

Rather, this Court has held that "it is within the sound discretion of the district court to grant or deny leave to amend" for any "*good reason*," or "*any apparent or declared reason*" *including* "futility, bad faith, undue delay, or undue prejudice to the opposing party." (emphasis added). Bad faith and prejudice are just two of those reasons, but by no means are they the "only reasons". *See Bank v. GoHealth, LLC*, *supra*; *see also Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.,* 970 F.3d 133, 142 (2d Cir. 2020)(leave to amend should be freely given *unless there is* "*any apparent or declared" reason—such as* undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."); *Williams v. Citigroup Inc.,* 659 F.3d 208, 213 (2d Cir. 2011)(same).

In this setting, in addition to prejudice and undue delay, the District Court had multiple other "good reasons" for denying Plaintiff's motion for leave to file a second amended complaint.

For one, permitting the Plaintiff's to file a second amended complaint would "disrespect" the legitimate interests of the Court. SPA2. *See Dietz v. Bouldin*, 579 U.S. 40, 47, 136 S. Ct. 1885, 1892 (2016) (noting a court's inherent authority to manage dockets with a "view toward the efficient and expedient resolution of cases"); *Lehmann v. OHR Pharm., Inc.,* 20-4185-cv, 2021 U.S. App. LEXIS 37187 at *3 (2d Cir. Dec. 16, 2021)(same); *Castro v. City of N.Y.,* 05 Civ. 593 (LAK)(MHD), 2009 U.S. Dist. LEXIS 63836 at *39 (S.D.N.Y. July 22, 2009) (holding that a "motion to amend fail[ed] principally because it was unduly delayed and would interfere with the efforts of the court to ensure reasonable scheduling...."). *see also Volunteer Fire Ass'n of Tappan, Inc.,* 2010 U.S. Dist. LEXIS 125394 at *10 *citing Parker v. Columbia Pictures Indus*., 204 F.3d 326 (2d Cir. 2000)(emphasizing the importance of "docket control, orderly litigation, and discouraging the indolent and cavalier").

Moreover, another "good reason" that the District Court relied upon in denying Plaintiff's motion for leave to file the SAC was that permitting the Plaintiff

to do so would "reward Plaintiff for disregarding the Court's [January 7th admonition and the March 10] deadlines and admonitions". SPA2. [7]

While Plaintiff argues that these deadlines and admonitions were unclear – and thus Plaintiff was never given fair notice that if he opposed Defendants' motions to dismiss he would be precluded from further amending the FAC – the record belies this assertion. App. Br. 27-35.

First, the District Court's January 7th admonition was as clear as can be: "[n]o further opportunities to amend will ordinarily be granted". JA403.

Second, the District Court's admonition at the March 10th conference was likewise perfectly clear. The District Court gave Plaintiff a choice. Plaintiff could *either* oppose the defendants' motions to dismiss Plaintiff's FAC, *or* Plaintiff could amend the complaint a second time. As the District Court unambiguously stated, "[i]f you are responding [to the Defendants' motions to dismiss], you are presumably foregoing, then, the decision to seek electively the right to amend". JA802.

---

[7] Plaintiff argues that these "reason[s] ha[ve] never been recognized by this court". App. Br. 22. At bottom, however, grounds for denial of a motion to amend are not limited to "bad faith and prejudice" as Plaintiff suggests, and this Court has recognized that "a district court may in its discretion deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Bank v. GoHealth, LLC*, *supra, at *2.*

While Plaintiff spends a great deal of time trying to muddy the waters as to what the District Court meant by this March 10[8]th admonition[8], Plaintiff's counsel's very own response to the District Court's admonition underscores the fact that there was no confusion on their part.

For example, in direct response to the District Court's March 10th admonition, Plaintiff's counsel immediately stated that Plaintiff would need "to decide whether our appropriate response is to oppose the motions to dismiss <u>or</u>…. To seek the Court's permission to amend, <u>even if we don't have an amendment as of right. And we would do that within that time period</u>" (emphasis added). JA802.

It is apparent from this response that Plaintiff was well aware that he had a binary choice: either he could amend the FAC *or* oppose the Defendants' motions

---

[8] Specifically, Plaintiff suggests that the District Court's deadline only applied to amendment as of right under Rule 15(a)(1). App. Br. 32-34. However, the record belies this assertion, considering that – at the time of the March 10th conference -- Plaintiff had already filed the FAC as of right, and thus an amendment "as of right" under Rule 15(a)(1) was no longer available. JA800.

Plaintiff also points to the fact that the District Court "referred to the possibility" that the FAC could change yet again as support for his contention that he was never given "fair notice" that he could not later file the SAC. App. Br. 34. This argument is a red herring. The District Court never stated that Plaintiff was forbidden from *ever* filing the SAC. Rather, the Court warned the Plaintiff that if he decided to oppose the Defendants' motions to dismiss, *then* he would be "foregoing" his opportunity to seek leave to amend.

to dismiss the FAC, but not both. Even so, Plaintiff inexplicably disregarded the warning and did both.

Moreover, not only were both the January 7th and March 10th admonitions perfectly clear, but – contrary to Plaintiff's argument – they were perfectly lawful and appropriate.

For example, this Court has *already* previously affirmed Judge Engelmayer's denial of a motion for leave to amend based on substantially similar circumstances, in which a plaintiff disregarded an "amend or oppose" order that was identical to the District Court's January 7th directive in the present case. *See Ritchie Capital Mgmt., L.L.C. v. GE Capital Corp.,* 821 F.3d 349, 352 (2d Cir. 2016)("[T]he district court's rules explicitly state that if a party does not elect to amend within 21 days of a motion to dismiss no further opportunity to amend will ordinarily be granted. [Citing to] Judge Paul A. Engelmayer, Individual Rules and Practices in Civil Cases R. 3(B). We find no error in the district court's decision to dismiss [the] complaint with prejudice and without granting [plaintiff] leave to amend").

Thus, there was absolutely nothing improper about the January 7th admonition.

Likewise, the District Court's March 10th order giving the Plaintiff a choice either to "amend or oppose" was also completely proper. *See In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998) (holding that district court

did not abuse its discretion in refusing request for leave to amend pleadings, after plaintiffs had previously chosen to amend despite being warned that if they chose to file an amended complaint, they would not be given another opportunity); *Ind. Pub. Ret. Sys. v. SAIC, Inc.,* 818 F.3d 85, 98 (2d Cir. 2016)(affirming district court's dismissal of complaint with prejudice in light of that that plaintiff failed to comply with the district court's "reasonable schedule").

Not only was it proper, but it is also in line with the standard instructions provided by other district courts in this Circuit. *See* Judge J. Paul Oetken, Individual Rules and Practices in Civil Cases (revised Feb. 16, 2021) (Rule 3(D)(ii) ("Non-moving parties are on notice that declining to amend their pleadings to respond to a fully briefed argument in the motion to dismiss may well constitute a waiver of their right to use the amendment process to cure any defects that have been made apparent by the briefing."); Judge Gregory Woods, Individual Rules of Practice in Civil Cases (revised May 19, 2020) (Rule 3(D) ("If the plaintiff elects not to amend its pleading, the motion will proceed in the normal course, and the plaintiff should not expect that the Court will grant further leave to amend the complaint to address the deficiencies identified in the motion to dismiss in the ordinary course.").

27

**B.      Defendants Would Have Been Prejudiced By The Untimely SAC**

Another "good reason"[9] that the District Court relied upon in denying Plaintiff's motion for leave to file the SAC was that permitting another amendment would have unduly prejudiced the Defendants. SPA2.

Indeed, as the District Court recognized, the Defendants would have been prejudiced had the District Court permitted the Plaintiff's "11th hour motion for leave to amend", which was filed a mere "four days before the defendants' replies [on their motions to dismiss the FAC] were due," since it would require the Defendants to respond to a new complaint with new allegations, when they had already briefed their replies on their motions to dismiss the FAC. SPA1-2.

Plaintiff argues that this does not constitute "prejudice", because discovery had not yet started, and points to two factors this Court has considered when determining prejudice, namely whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery

---

[9] This Court has referred to the prejudice to the opposing party resulting from the proposed amendment as among the "most important" reasons to deny leave to amend.  *AEP Energy Services Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010), *citing State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) ("Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.").

and prepare for trial; or (ii) significantly delay the resolution of the dispute. App. Br. 21-23.

However, contrary to the Plaintiff's argument, while these two factors are often considered by courts in determining prejudice, by no means are these the only two factors that courts consider. *See Lynch v. Nat'l Prescription Adm'rs, Inc.,* 795 F. App'x 68 (2d Cir. 2020)("In gauging prejudice [a court] consider[s], *among other factors,* whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute")(emphasis added).

Thus, the District Court was certainly within its discretion in finding that allowing Plaintiff to file the SAC at the 11th hour would prejudice the Defendants, and especially Wigdor, considering Wigdor had already filed two motions to dismiss. *See Johnson v. City of New York*, 669 F. Supp. 2d 444, 453 (S.D.N.Y. 2009) (finding undue prejudice where – as in the present case – the defendants already "had to refile and rebrief their motion to dismiss once to accommodate [plaintiff's] last amendment"); *Farricker v. Penson Dev., Inc.,* 513 F. App'x 46, 48-49 (2d Cir. 2013)(affirming district court's denial of a motion for leave to amend based on undue prejudice where – as here – a motion to dismiss was fully briefed and the prejudice facing the defendants involved additional time and expense they would have to incur in responding to yet another complaint); *Bay Harbour Mgmt., LLC v. Carothers*, 474

F. Supp. 2d 501, 503 (S.D.N.Y. 2007) (denying motion to amend where a "motion to dismiss the amended complaint had been fully briefed and defense counsel had prepared for oral argument"); *Volunteer Fire Ass'n of Tappan, Inc. supra, at* *18, 19 (denying plaintiff's motion to belatedly amend a complaint on the basis of prejudice resulting from the fact that "[d]efense counsel would have wasted resources, and Defendants would have needlessly incurred legal fees, in drafting motions to dismiss the original Complaint, and they were forced to respond to the new allegations and claims only in reply on their motions rather than in a fresh round of briefing," and "whether the result of laziness, disregard, or gamesmanship", the court would not "award" such conduct).

Moreover, if the District Court would have permitted Plaintiff to amend his complaint yet again, not only would the Defendants – especially Wigdor – be prejudiced by virtue of having to needlessly restart briefing, but they also would be prejudiced because the SAC would introduce still more baseless, scandalous, and conclusory "RICO" allegations into the proceedings. This would be inconsistent with the objective of dismissing meritless RICO claims early on in a case. *See e.g. Sehgal v. Aggarwal*, 20-CV-4577 (JS)(ARL), 2021 U.S. Dist. LEXIS 154043 at *6 (E.D.N.Y. Aug. 16, 2021).

## C.    Plaintiff Was Dilatory In Seeking Leave To File The SAC

Not only did the District Court properly deny Plaintiff's motion to amend on prejudice grounds, but the District Court also recognized that Plaintiff acted with undue delay by filing his motion for leave to amend at the "11th hour", a mere "four days before the defendants' replies [on their motions to dismiss the FAC] were due". SPA1-2. This was another, entirely appropriate, basis to deny leave to amend. *See PI, Inc. v. Quality Prods.,* 907 F. Supp. 752, 765 (S.D.N.Y. 1995)(denying motion to amend where "its timing demonstrates that it is clearly a dilatory tactic to avoid the dismissal of this action" when the motion for leave to amend was filed after the motions to dismiss were fully briefed).[10]

Plaintiff argues that he did not delay and that he "acted in good faith in filing his motion to amend". App. Br. 24.  In support of this contention, Plaintiff claims that the reason for the delay in seeking leave to file the SAC was for "new counsel to investigate and then pursue all factual and legal claims available to plaintiff, and

---

[10] Furthermore, considering the frivolous nature of Plaintiff's claims in this action, and Plaintiff's conduct throughout this litigation – which "narrowly" skirted Wigdor's Rule 11 sanctions motion – it is apparent that Plaintiff's "11th hour" motion for leave to amend, filed after the motions to dismiss were fully briefed, was just a bad faith tactic to keep this action alive in order to spread false, scandalous, and utterly conclusory allegations designed to damage Defendants' reputations, and deflect attention away from Plaintiff's own headlines based on his well-documented and disturbing association with Jeffrey Epstein. JA547, JA482, JA 486-489. In this context, this Circuit has repeatedly recognized the "bad faith" nature of a motion for leave to amend as a reason to deny the motion. *See, e.g., Bank v. GoHealth, LLC, supra*.

to revis[e] the existing litigation strategy based on newly obtained evidence". App. Br. 24-25.

Plaintiff's argument is misplaced for various reasons. First, the fact that Plaintiff hired new attorneys – who believed that there was a more "optimal" way to set forth Plaintiff's claims – does not at all excuse Plaintiff's disregard of the District Court's March 10 admonition. (App. Br. 26.). One of the new attorneys – Mr. Figel – was present at the March 10th initial conference. He heard the District Court's admonishment. Plaintiff's counsel – both old *and new* – therefore knew that if Plaintiff wanted to try and more "optimally" set forth his claims, he was free to seek leave to do so, but not if he chose to file an opposition to the Defendants' motions to dismiss, which was the choice he wound up making.

In any case, "change in counsel, or the dissatisfaction with the manner in which previous counsel pleaded claims . . . cannot excuse undue delay to amend." *Ramsay-Nobles v. Keyser,* 16 Civ. 5778 (CM), 2018 U.S. Dist. LEXIS 214472 at *20 (S.D.N.Y. Dec. 18, 2018) (quoting *Berns v. EMI Publ'g, Inc*., 95 Civ. 8130 (KTD), 1999 WL 1029711, at *5 (S.D.N.Y. Nov. 10, 1999); *Fioranelli v. CBS Broad., Inc.,* 15-CV-952 (VSB), 2019 U.S. Dist. LEXIS 36099 at *10 (S.D.N.Y. Mar. 6, 2019) ("It is well established that the failure of an attorney to recognize a potential cause of action is not a sufficient justification for granting leave to amend a complaint.").

Second, Plaintiff's contention that the delay was due to these new attorneys investigating "newly obtained evidence" is simply false. The supposedly "new" facts Plaintiff sought to introduce into his SAC were that: (i) Ganieva was in touch with Wigdor LLP in October 2020; (ii) details concerning Mr. Rubenstein's work for Apollo; and (iii) that Mr. Harris allegedly discussed forcing Plaintiff out of Apollo.

None of this information was "new". Indeed, in Plaintiff's opposition to the motions to dismiss his FAC, he relied on the allegation that Ganieva was in touch with Wigdor in October 2020, and the general substance of the remaining two allegations was already included in the FAC.

Simply put, Plaintiff was admonished that should he want to move for leave to file a SAC, he would need to do so within a specific time period (*i.e.*, before filing an opposition to the Defendants' motions to dismiss the FAC). He disregarded this admonishment and unduly delayed in seeking leave to file the SAC.[11] Thus, had the District Court permitted this belated amendment it would have prejudiced the Defendants, especially Wigdor which would then have had to brief a *third* motion to dismiss.

---

[11] In this context, the fact that Plaintiff advised the court he might – at some point in the future, without explaining how or when – seek leave to file a SAC is immaterial. *See Rosner v. Star Gas Partners, L.P.,* 344 F. App'x 642, 645 (2d Cir. 2009)(finding that district court did not abuse its discretion when the plaintiff merely informally sought leave to amend, but did "not submit proposed amendments or otherwise indicate how they would correct any deficiencies in the complaint").

**POINT III**

**BECAUSE FURTHER LEAVE TO AMEND WOULD BE FUTILE, THE DISTRICT COURT PROPERLY DISMISSED THE FAC WITH PREJUDICE**

The Court's denial of Plaintiff's motion for leave to amend, and its dismissal of the FAC with prejudice, also was justified on the separate ground that "further amendment of the Complaint would be futile". *Soto v. Disney Severance Pay Plan*, 26 F.4th 114, fn. 9 (2d Cir. 2022).

This is especially true considering Plaintiff already had one opportunity to amend his Complaint. Yet, even after receiving the Defendants' motions to dismiss, which highlighted the specific deficiencies of the original Complaint, Plaintiff was unable to cure its fatal and fundamental flaws despite the addition of two new named defendants and various new "factual" allegations.

In any event, as set forth in the appellee briefs of Defendants Harris, Rubenstein, and Ganieva – the named RICO defendants – the RICO claims asserted against these Defendants were fundamentally deficient, and the District Court did not abuse its discretion in dismissing those RICO claims with prejudice.[12]

---

[12] In the interests of economy, Wigdor – which was not named as a Defendant on the RICO claims that Plaintiff attempted to assert in the FAC and SAC– respectfully refers the Court to its co-Defendants' briefs, which address in detail why the RICO claims in the proposed SAC were facially deficient, and why the District Court did

More generally, Plaintiff's argument for why the District Court abused its discretion in dismissing its FAC with prejudice is premised on the notion that: (i) the District Court failed to review the SAC; (ii) the District Court was "required" to review the SAC; and (iii) if the District Court had reviewed the SAC, it would have seen that Plaintiff's claims were plausible. App. Br. 39, 42-43.

Plaintiff is mistaken. First, the District Court <u>did</u> consider the proposed SAC before dismissing the FAC with prejudice. For example, when the District Court denied Plaintiff's motion for leave to amend, it based its decision on "much of the same reasons given by the defendants" in their April 22 letter, which *included* an argument that the proposed amendments were facially deficient, and therefore futile. SPA1, JA1338-1340.

---

not abuse its discretion in finding that any proposed amendment to the RICO claims would be futile.

With respect to the state law defamation claim against Wigdor – which was the only claim against Wigdor in the FAC and proposed SAC – the District Court correctly declined to exercise supplemental jurisdiction considering that the defamation claim against Wigdor did not share a common nucleus of operative facts with the RICO claims against Wigdor's co-Defendants. Plaintiff does not address this point in his brief, and to the extent Plaintiff now tries to argue that the District Court should have exercised supplemental jurisdiction over the defamation claims against Wigdor, that argument should be deemed abandoned. *Smith v. Cuomo*, 306 F. App'x 645, 647 (2d Cir.), *cert. denied*, 558 U.S. 933, 130 S. Ct. 152 (2009)("It is well established that an argument not raised on appeal is deemed abandoned and lost, and that a court of appeals will not consider the argument unless it has reason to believe that manifest injustice would result otherwise.").

Second, even if the District Court did not review the proposed SAC, that would not make denial of leave to amend an abuse of discretion, considering that – contrary to Plaintiff's argument – the District Court is not "required" to review a proposed amended complaint. Rather, "when [a] plaintiff has submitted a proposed amended complaint, the district judge *may* review that pleading for adequacy…." (emphasis added). *Grabcheski v. Am. Internat.Grp., Inc.,* 687 F. App'x 84, 88 (2d Cir. 2017); *see also El-Shabazz v. N.Y. Comm. on Character & Fitness for the Second Judicial Dep't,* 428 F. App'x 95, 96 (2d Cir. 2011)(same).

The main case the Plaintiff cites to in support of his contention that a district court "must" review a proposed amended complaint, and that its failure to do so is an abuse of discretion, is *Bensch v. Estate of Umar,* 2 F.4th 70, 80 (2d Cir. 2021). App. Br. 2, 39, 47. In *Bensch*, this Court overturned the district court's finding of futility, and commented that the district court "offer[ed] no analysis of the additional allegations that [the plaintiff] propose[d] to include in Second Proposed Amended Complaint." *Id.* [13]

---

[13] Plaintiff's citation to *Brook v. Simon & Partners LLP*, 783 F. App'x 13, 16 (2d Cir. 2019) is also inapposite. (App. Br. 37,41.). While in *Brooke*, this Court vacated the district court's denial of leave to amend, in doing so it emphasized that the district court never addressed plaintiff's request to amend nor determined that amendment would be futile. In the present case, the District Court *did* determine that amendment of Black's conclusory and defective RICO claims would be futile.

However, a review of the Court's decision in *Bensch* makes clear that, contrary to Plaintiff's contention, it did not hold that a district court is "required to analyze the sufficiency" of a proposed amended complaint, and that its failure to do so is abuse of discretion. (App. Br. 2, 39, 47.) Rather, in the *Bensch* case, the allegations against the defendants could have been plausible if certain substantive facts were added to a complaint, but the district court offered no analysis of the proposed new allegations, which would have been the proper thing for the district court to have done considering that the additional allegations did make the complaint plausible.[14]

However, by no means did the *Bensch* decision introduce a new bright line rule to the effect that a District Court *must* review a proposed amended complaint before ruling a motion for leave to amend or dismissing a prior complaint with prejudice.

Nor, contrary to Plaintiff's suggestion, did the *Bensch* decision introduce a new bright line rule that a court is required to provide some sort of analysis or feedback regarding a proposed amended pleading before denying leave to amend based on futility. To the contrary, the law in this Circuit is the exact opposite. *See*

---

[14] Contrast that to the present case, where Plaintiff's claims were so "glaringly deficient in fundamental respects" – as the District Court properly found – that any amendment would be futile, and dismissal with prejudice was therefore proper.

*Bank v. GoHealth, LLC*, *supra,* at *3(When denying leave to amend a complaint based on futility, the district court does not need to "provide[] feedback on a plaintiff's [proposed] complaint. Instead, where a plaintiff is unable to demonstrate that they would be able to amend their complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied").

Therefore, this Court should affirm the District Court's decision to dismiss the case with prejudice, and should reject the Plaintiff's request to "remand" back to the District Court to review the sufficiency of the proposed SAC. *See Werking v. Andrews*, 526 F. App'x 94, 97 (2d Cir. 2013)("[I]t would be futile to remand to the district court for it to make a discretionary ruling on whether a proposed amendment would be prejudicial when the disposition is so clearly sound and the district court had already rejected the amendment on other grounds").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should affirm the District Court's denial of Plaintiff's motion for leave to amend in its April 25th order and dismissal of Plaintiff's RICO claims with prejudice in its June 30th decision.

Dated: October 7, 2022

RIVKIN RADLER LLP

By: _____
        Janice DiGennaro, Esq.
        Max Gershenoff, Esq.

926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Attorneys for Defendant-Appellee*
*Wigdor LLP*

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)</u>

This brief complies with the type-volume limitation of Fed. R. App. P. Rule 32(g)(1) because this brief contains 8,626 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft© Word in Times New Roman, 14 point font.